John **DEFINO MARTONE**, Defendant, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 7038.

United States Court of Appeals First Circuit.

June 13, 1968.

See also D.C., 283 F.Supp. 77.

---

Milton E. Grusmark, Miami Beach, Fla., for appellant.

Blas C. Herrero, Jr., Asst. U. S. Atty., with whom Francisco A. Gil, Jr., U. S. Atty., and Charles E. Figueroa, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

■ Early in the morning of July 17, 1967, several Treasury Department agents went to the home of one Luis Rodriquez Lebron to arrest him. They knocked on the door and identified themselves to the defendant who they could see through the window was coming forward after a two minute delay.[1] When defendant ran back into the interior of

1. Agent Jorge said: "Open the door because I have a warrant of arrest against Willie Pon. We are from the Narcotics."

Willie Pon is an alias for Rodriquez Lebron.

the house the agents forced their way through the door.[2]

Upon entering the house the agents observed defendant running from the back of the house into the bathroom. Agent Fuentes Ortega in pursuit heard the flushing of the toilet as he followed defendant into the bathroom. After ejecting the defendant from the bathroom the agent observed a powder on the edge of the commode. This powder, which was gathered and preserved, was found to be narcotics. In the meanwhile agent Jorge went into another room to arrest Rodriquez Lebron, the subject of the arrest warrant. As a result of all this defendant was indicted and convicted on two counts of narcotics violations.

■ Of the various points raised on appeal none were urged upon the district court. Further, only one of these points, an allegation that the entry and search by the agents were illegal, even begins to rise to the dignity of "plain error," a matter that we would notice on appeal. See Fed.R.Crim.P. 52(b); Dichner v. United States, 348 F.2d 167 (1st Cir. 1965).

Defendant argues that because the agents had seen only him in the house and the arrest warrant was only for Rodriquez Lebron, they had no occasion to force their way into the house. He asserts that the record reveals no probable cause for believing that Rodriquez Lebron was in the house. The record does reveal, however, that the house was the residence of Rodriquez Lebron and that the agents' visit took place before six o'clock in the morning. It is apparent that the common sense of expecting a man to be at home at six a. m. commended itself to all concerned at the trial and defendant's attempt to challenge it now appears to be an afterthought.

■ Defendant further asserts that in any event the agents had no right to arrest him even assuming their legitimate entry into the house, since as above stated the warrant ran only to Rodriquez Lebron and any evidence gathered against defendant would be the result of an illegal search. We think that in advancing this argument defendant unduly emphasizes his own activities apart from their total context. The government agents were not, however, obliged to take such an atomistic view of the situation. They came armed with a warrant for arrest based on probable cause. They were involved in an attempt to apprehend a suspect amid circumstances peculiarly susceptible to the destruction of evidence. There had already been a two minute delay before defendant even came to the door. Then instead of admitting these properly identified agents, defendant retreated to the interior of the house. He now emphasizes that the warrant was not for him but for Rodriquez Lebron. Far from aiding his cause, this merely underscores his involvement. Upon gaining entrance the agents acted properly. The defendant had repaired in haste to the bathroom and therefore the agents had reasonable cause to believe that he was disposing of evidence.

■ At first agent Fuentes Ortega did not arrest the defendant. He merely put him out of the room to facilitate investigation and to prevent the destruction of evidence. Moreover, despite defendant's contention to the contrary it is entirely fanciful to suppose that nothing could be done with respect to his activities, before Rodriquez Lebron was arrested. Fourth amendment protections,

2. Procedure for forceful entry to execute an arrest warrant is governed by state law. Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Rule 17 of the Rules of Criminal Procedure of the Commonwealth of Puerto Rico reads as follows: "To make an arrest, a private person if the offense is a felony, and a public officer in all cases, may break open any door or window of the house in which the person to be arrested is, or in which they have reasonable ground for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

serious and fundamental as they are, do not compel the unedifying spectacle of law enforcement officers naively standing by while the evidence of a criminal offense is being flushed down a toilet. There is no constitutional right to destroy evidence before the very eyes of government agents.

The landmark case of Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) is pertinent here. There the Court upheld convictions for possession of narcotics based on arrests without a warrant. So alert was the Court in that case to the possibility of destruction of evidence that it upheld the convictions despite the fact that the officers involved had gained entrance to an apartment by a passkey without knocking or identifying themselves in any way. *Ker,* supra at 37, 40, 83 S.Ct. 1623. In *Ker,* as here, the police went to an apartment to arrest one person and as a result of what they observed arrested his wife as well. Supra at 36–37, 83 S.Ct. 1623. Also, in *Ker,* as here, an officer walked to an adjacent room and observed evidence. The Court found this invulnerable to constitutional attack even though it entertained the hypothesis that it occurred before any arrest was made and although, unlike here, there was then no immediate threat of the destruction of evidence.

"We cannot say that it was unreasonable for Officer Berman, upon seeing Diane Ker emerge from the kitchen, merely to walk to the doorway of that adjacent room. We thus agree with the California court's holding that the discovery of the brick of marijuana did not constitute a search, since the officer merely saw what was placed before him in full view." Supra, at 43, 83 S.Ct. at 1635.

Defendant raises three other points which may be dismissed summarily, especially because as noted above they were not raised in the district court and are not of constitutional proportion.

1. Defendant maintains that the record does not show that an oath was administered to the interpreter. More important, it does not show that it was not. In the absence of objection, the presumption of regularity, cf. Murray v. United States, 300 F.2d 804, 806 (1st Cir. 1962), is an adequate answer to the raising of such matter on appeal. Nor is it inappropriate to observe that during the trial there was no want of people in the court room versed in both English and Spanish, notably defense counsel, who were sensitive to any defect in translation.

2. Defendant also alleges that by its instruction to the jury, the district court usurped the fact-finder's function on the vital issue of possession. We have reproduced the pertinent portion of the instruction in the margin and italicized the excerpt claimed to be offensive.[3] With regard to this we need comment only that defendant has clearly misinterpreted the language of the district court. The final portion of the charge refers only to the question of tax stamps, not possession.

3. Finally, defendant contends that there is no evidence in the record to the effect that he ever had possession of a narcotic drug. This contention is worthy of consideration only insofar as it points out the unfairness of raising matters on appeal that were not called to the attention of the district court. In cross-examination of agent Jorge, the defense elicited testimony that "I went [in the bathroom] when the Agent Felix Fuentes said there is some leftovers of what he threw in the bathroom." There-

---

3. " * * * if you find it has been shown beyond a reasonable doubt that the defendant was in possession of cocaine in approximately the quantity charged, however little or much that may be, this is in itself prima facie evidence of a violation of the sub-section that was referred to ; namely, prima facie evidence that he had purchased the drug unlawfully provided that you find that there are no tax paid stamps found upon the drug or the package in which it was contained, *and, of course, you know from the evidence that there is evidence from which that might be found.*"

after, the defendant's counsel did not see fit to explore the question of possession further nor did he object to the introduction of the narcotics into evidence as a government exhibit. It is much too late to raise the question of possession now.

Affirmed.