115 N.J. Super. 253 (1971)
279 A.2d 125
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GARY BOSWELL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1971.
Decided May 24, 1971.
*254 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for appellant (Mr. David S. Baime, Assistant Prosecutor, of counsel; Messrs. David S. Baime, Assistant Prosecutor, and Anthony J. Fusco, Jr., Legal Assistant, on the brief; Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
Mr. Edward P. Hannigan, Assistant Deputy Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
PER CURIAM.
The State appeals from an order suppressing narcotics and narcotic paraphernalia allegedly found in possession of defendant.
*255 The State's proofs at the hearing on the motion to suppress were to the following effect: Newark Narcotics Detective Scott, who had made over 200 narcotics arrests during his year and a half service with the police, testified that while he and three other officers in plain clothes were seated in an unmarked police vehicle they received a message from headquarters that narcotics were being sold by Gary Boswell from premises at 416 South Ninth Street. They were told that this information had been received from the Governor's office and the State Police. The detectives set up a visual surveillance about 35 feet from the two-family frame building.
Five minutes later they observed one McNeal, known to them as a narcotics user, knock on the first-floor apartment door. Boswell, whom the detectives recognized from rogues gallery photographs carried by one of their number, responded to the knock.
McNeal entered the apartment. The police approached, intending to question McNeal when he left the building. They were on the front steps as the front door opened. Defendant, who was about to emerge from the apartment, yelled "police" when he noticed their presence and ran back into the building, down the stairs and into the basement. The police pursued. In the basement one detective observed defendant kneeling at an opening in the floor. Three females were standing next to him. McNeal had gone into the "back" area of the building out of sight.
The opening in the floor was an uncovered sewer pipe about four inches in diameter. Stagnant water was visible in the pipe about two feet below the opening. Scott testified that with the aid of a flashlight he could see a hypodermic needle floating on the surface. He had not actually seen defendant drop the needle there. After Scott made an unsuccessful attempt to retrieve the needle by inserting his hand in the pipe, the officers, using an improvised strainer, fished the needle out along with several "white caps" (packets of heroin). Defendant was then formally arrested.
*256 Defendant's version of the episode differed considerably. He acknowledged that his friend (McNeal) came to his Ninth Street home on that day. After letting McNeal in, defendant went downstairs to finish dressing. Boswell heard noise from above and returned upstairs to investigate. He came upon a police officer and heard him say to McNeal that McNeal had flushed something down the sewer. The police then allegedly put a gun to Boswell's chest and ordered him downstairs. Defendant asserts that he was threatened when he demanded that the police exhibit a warrant. According to defendant, the police first searched the apartment before coming upon the drain and announcing their find. Boswell denied opening the door to the detectives and that he had yelled "police" when he saw them.
At the request of the hearing judge, the officer who received the information from the State Police was presented. Sergeant Bimbo related that headquarters was notified that the State had received complaints from the Governor's office and others that defendant was selling narcotics from the 416 South Ninth Street address. However, the officer had not been informed of the reliability of those making the original complaints, details of the illegal activity, or how the informants happened to obtain this information. Bimbo also testified that the normal procedure for "checking out" such a tip was by setting up a surveillance.
The hearing judge accepted the version of the facts by the police officers as true. However, he concluded that since the tip had not been corroborated and nothing occurred at the scene which could give rise to a reasonable finding of probable cause, defendant's motion must be granted.
Accepting as true, as the trial court did, the testimony of the police officers as to what occurred, we are of the opinion that the order suppressing this evidence was erroneous.
The detectives knew the tip came from the State Police and the Governor's office but knew nothing as to the sources of their information. Apparently the Newark police had also received complaints (the nature of which being unrevealed) *257 relating to this particular address. Detective Scott explained that the officers went to the home after receiving the tip because they were expected "to go there and do something about it." During the brief surveillance, a known narcotics user was observed entering defendant's apartment. The detectives approached the house itself intending to wait on the front stoop and stop McNeal as he came out. Instead they were confronted by defendant who exclaimed "police" and attempted flight.
We agree that the tip of itself would not provide probable cause to justify defendant's arrest without a warrant. See Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971). But here there was much more. Defendant's conduct on observing the plainclothesmen, after having admitted a narcotics user to his apartment, lends credence to the original information and reasonably supports the belief that defendant was guilty of a current narcotics violation. Unlike Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), there was no doubt as to the identity of the detectives as law enforcement authorities. Furthermore, the arresting officers in this case did not predicate their conclusion that this defendant was then violating the narcotics laws on his flight alone. In contrast, here the officers had specific information about the sale of narcotics by a particularly identified individual from a certain address. Coming upon that scene, and after seeing a narcotics user admitted, the officers encountered defendant who expressed his apprehension at the confrontation and attempted immediate escape. We hold that such conduct, combined with all the pre-existing information obtained by or known to the police, authorized them to effectuate defendant's arrest without a warrant. Cf. People v. Satterfield, 252 Cal. App.2d 270, 60 Cal. Rptr. 733 (D. Ct. App. 1967). The search made to prevent the immediate destruction of loss of evidence, was well within the scope permitted under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
Reversed.