STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOBBY ERIC HUTCHINS, DEFENDANT-RESPONDENT.

Argued April 25, 1989—Decided August 11, 1989.

*Hillary L. Brunell,* Assistant Prosecutor, argued the cause for appellant (*Herbert H. Tate, Jr.,* Essex County Prosecutor,

attorney, *Barbara A. Rosenkrans*, Assistant Prosecutor, on the briefs).

*Susan Green*, Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum*, Public Defender, attorney, *Susan Green* and *David L. Kervick*, on the briefs).

*Cherrie M. Black* argued the cause for *amicus curiae*, Attorney General of New Jersey (*Peter N. Perretti, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

In this case, as in *State v. Lewis*, also decided today, 116 *N.J.* 477 (1989), we consider the legality of a warrantless entry into a home following an informant's tip of suspected drug activity.

In the present case, police were told by an informant that a black male named Bob, dressed in blue, was selling heroin from a certain address in Newark. Two officers, in plainclothes, proceeded to the address to attempt an undercover drug buy. Defendant, a black male wearing a blue jogging suit, answered the door but did not respond to the officers' attempted solicitation of a sale of drugs. Observing that defendant's right fist was clenched in a manner suggesting possible concealment of narcotics, the officers identified themselves. At that point, according to one officer's testimony, defendant turned around and fled into the house. The police pursued defendant into the house, apprehending him and recovering ten glassine envelopes containing heroin from his right hand. According to defendant's testimony, he backed into the house, but the officers pursued him and, in effect, "planted" the heroin on him.

Without resolving the factual dispute between the officers and defendant, the trial court granted defendant's motion to suppress the narcotics primarily on the basis that the police should have obtained a search warrant before entering the house. The Appellate Division affirmed on the ground that the asserted exigency in this case, the potential destruction of

narcotics, was improperly created by the police and thus failed to support the warrantless entry under the "exigent circumstances" exception to the fourth-amendment warrant requirement. *State v. Hutchins*, 226 *N.J.Super.* 454 (1988). The Appellate Division reasoned that the suppression order was properly granted because the police created the "exigency," and the "exigency" was not an "unintended and collateral residual effect" of the officers' announcement that they were police officers. *Id.* at 461.

■ We conclude that although the exigent circumstance can properly be described as "police-created," it may have arisen as a result of reasonable police investigative conduct intended to generate evidence of criminal activity. In that context, the exigency of potential destruction of narcotics, if accompanied by probable cause, could support a warrantless entry into the premises. Thus, we reverse and remand the matter to the Law Division to resolve the disputed factual issues and determine whether the police officers had probable cause to arrest defendant and whether their warrantless entry was justified based on the existence of "exigent circumstances."

## I.

On April 4, 1984, at approximately 7:00 p.m., Detective Thompson of the Newark Police Department received information from an informant he had used previously that a black male named Bob "dressed in blue" was "dealing heroin" from 118 Eleventh Avenue, Newark. At about 8:00 p.m., Detective Thompson and his colleague Detective Lemon proceeded to this address to effect an undercover drug purchase. Detective Lemon was familiar with the house based on an arrest he had made there during the prior winter of a person engaged in narcotics distribution. Detective Lemon testified at the suppression hearing that it was normal police procedure to attempt an undercover purchase of narcotics in order to confirm an informant's tip that drug distribution was occurring at a speci-

fied location. According to Lemon, "it would be very stupid to waste time to get a search warrant knowing he probably won't be there tomorrow. In this town we just basically get information, we go there and try to make an undercover buy."

When they arrived, Lemon knocked on the door, which was opened by a black male wearing a blue jogging suit, "fitting a description we received." Lemon testified that when defendant opened the door, he asked the defendant, "do you have anything?" Defendant did not respond. Lemon observed that defendant's right fist was clenched. Based on his experience and the information that Detective Thompson had received, Lemon suspected that defendant had contraband in his hand. He announced that he and Detective Thompson were police officers. Lemon testified that defendant then turned and ran into the corridor and up a flight of stairs. Detectives Lemon and Thompson pursued defendant into the house, where they apprehended him on the staircase. Detective Lemon recovered ten glassine envelopes, containing what was subsequently confirmed to be heroin, from defendant's clenched right hand. The police then checked the house for other occupants. Lemon testified that Willie Griffin, the person he had arrested there previously, was also present at the time of defendant's arrest.

Defendant's testimony disputed Lemon's account of the facts. Defendant testified that at approximately 6:00 p.m. on April 4, 1984, he went to visit his friend, William Griffin. At approximately 8:00 p.m., defendant responded to a knock at the door and saw a man dressed in civilian clothes. Defendant recalled that he "asked for something." When defendant did not respond within a few seconds, the caller entered the house and announced that he was a police officer. According to defendant, at this point he "backed up" into the house. Lemon then took defendant upstairs and searched him, finding sixty-four dollars on his person. Detective Thompson also entered the house and searched all other rooms. According to defendant, Thompson later arrested defendant upstairs, showed him the glassine bags, and stated, "[t]his is yours."

Defendant was charged with possession of Controlled Dangerous Substance (C.D.S.), *N.J.S.A.* 24:21–20, and possession of C.D.S. with intent to distribute, *N.J.S.A.* 24:21–19(a)(1). On defendant's motion to suppress, the trial court found that the informant's tip established probable cause to search the residence for drugs and that the officers' failure to obtain a warrant was "fatal to the search." Without resolving the factual conflict between the officer's and defendant's testimony, the court found that the events following the officers' attempt to buy drugs did not justify their warrantless entry and arrest of defendant.

The Appellate Division affirmed the trial court's grant of defendant's motion to suppress. *State v. Hutchins,* 226 *N.J. Super.* 454 (1988). For purposes of the appeal the Appellate Division accepted Officer Lemon's version of the facts. *Id.* at 456. The court acknowledged the stringent standard traditionally applied by the United States Supreme Court in cases involving warrantless searches in the home. *Id.* at 457. Declining to consider the question of probable cause, the court focused on "whether an exigency created by police action can justify a warrantless search." *Id.* at 456. The court found that the police in this case impermissibly created the asserted exigency, the potential destruction of evidence. It reasoned, "[o]nce the police identified themselves the destruction of evidence was highly probable. But that exigency was the result of voluntary action taken by the police." *Id.* at 457.

We granted the State's motion for leave to appeal.

## II.

In *State v. Bolte,* 115 *N.J.* 579 (1989), a case involving application of the exigent circumstances exception to a warrantless entry into the home of a defendant suspected of various motor vehicle offenses, we recently reiterated the principle that "warrantless searches or arrests in the home must be subjected to particularly careful scrutiny." *Id.* at 583. As the United

States Supreme Court has acknowledged, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court*, 407 *U.S.* 297, 313, 92 *S.Ct.* 2125, 2134, 32 *L.Ed.*2d 752, 764 (1972). Accordingly, it is well established that "searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 *U.S.* 573, 586, 100 *S.Ct.* 1371, 1380, 63 *L.Ed.*2d 639, 651 (1980), and hence "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." *Welsh v. Wisconsin*, 466 *U.S.* 740, 749, 104 *S.Ct.* 2091, 2097, 80 *L.Ed.*2d 732, 743 (1984).

The parameters of the exigent-circumstances exception to the warrant requirement referred to by the Court in *Welsh* are not definitively established. One of the earliest references to the exception is found in *Johnson v. United States*, 333 *U.S.* 10, 14, 68 *S.Ct.* 367, 369, 92 *L.Ed.* 436, 440–41 (1947):

> There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. [333 *U.S.* at 14–15, 68 *S.Ct.* at 369, 92 *L.Ed.* at 441.]

The exigent circumstances exception was relied on by the government in *Vale v. Louisiana*, 399 *U.S.* 30, 90 *S.Ct.* 1969, 26 *L.Ed.*2d 409 (1970). In that case police officers had a valid arrest warrant for defendant, a suspected drug dealer, and arrested him after they observed him make a drug sale. *Id.* at 32–33, 90 *S.Ct.* at 1970–71, 26 *L.Ed.*2d at 412. The Court rejected the government's contention that the subsequent search of his home was validated by exigent circumstances:

> [O]ur past decisions make clear that only in "a few specifically established and well-delineated" situations, may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. The burden rests on the State to show the existence of such an exceptional situation. And the record before us discloses none.
>
> There is no suggestion that anyone consented to the search. The officers were not responding to an emergency. They were not in hot pursuit of a fleeing felon. The goods ultimately seized were not in the process of destruction. Nor were they about to be removed from the jurisdiction.
>
> [*Id.* at 34–35, 90 *S.Ct.* at 1971–72, 26 *L.Ed.*2d at 413–14 (citations omitted).]

The Supreme Court has held that exigent circumstances consisting of the need to apprehend and subdue an armed felon supported a search of a residence into which the felon under "hot pursuit" by police had fled. *Warden v. Hayden*, 387 *U.S.* 294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782 (1967). The Court observed that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Id.* at 298–99, 87 *S.Ct.* at 1645–46, 18 *L.Ed.*2d at 787.

The Court has also considered the potential destruction of evidence to be an exigent circumstance that would support a warrantless entry. In *United States v. Santana*, 427 *U.S.* 38, 96 *S.Ct.* 2406, 49 *L.Ed.*2d 300 (1976), police officers effected a drug purchase with marked money and then proceeded to the residence of defendant, the source of the drugs. Identifying themselves as police, the officers pursued defendant from her doorway to the vestibule of her house into which she retreated. A search uncovered heroin and the marked money. The Court upheld the entry based on the exigency that the evidence might otherwise be destroyed.

Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence. Once she had been arrested the search, incident to that arrest, which produced the drugs and money was clearly justified. [*Id.* at 43, 96 *S.Ct.* at 2409–10, 49 *L.Ed.*2d at 305 (citation omitted).]

Most recently, in *Welsh v. Wisconsin, supra*, 466 *U.S.* 740, 104 *S.Ct.* 2091, 80 *L.Ed.*2d 732, the Court invalidated the warrantless night entry by police into a home to effect an arrest for commission of a "nonjailable" traffic offense, holding that so minor an offense could not serve as an exigent circumstance sufficient to "overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Id.* at 750, 104 *S.Ct.* at 2098, 80 *L.Ed.*2d at 743.

The federal courts have encountered the exigent circumstances doctrine in a wide variety of factual contexts, inducing some courts to offer criteria relevant to its proper application. In *Dorman v. United States*, 435 *F.*2d 385 (D.C.Cir.1970) (*en*

*banc* ), the court advanced this formulation to guide application of the doctrine:

> Terms like "exigent circumstances" or "urgent need" are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant, and that it is only in the light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as "unreasonable." While the numerous and varied street fact situations do not permit a comprehensive catalog of the cases covered by these terms, it may be useful to refer to a number of considerations that are material, and have particular pertinence in the case at bar.
>
> First, that a grave offense is involved, particularly one that is a crime of violence. \* \* \*
>
> Second, and obviously inter-related, that the suspect is reasonably believed to be armed. Delay in arrest of an armed felon may well increase danger to the community meanwhile, or to the officers at time of arrest. \* \* \*
>
> Third, that there exists not merely the minimum of probable cause, that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause \* \* \*.
>
> Fourth, strong reason to believe that the suspect is in the premises being entered.
>
> Fifth, a likelihood that the suspect will escape if not swiftly apprehended.
>
> Sixth, the circumstance that the entry, though not consented, is made peaceably. \* \* \*
>
> Another factor to be taken into account, though it works in more than one direction, relates to time of entry—whether it is made at night. [*Id.* at 392–93 (footnotes omitted).]

In *Dorman,* the Court of Appeals upheld the warrantless entry and search of the residence of defendant who earlier that evening had committed an armed robbery of a clothing store, concluding that the commission of a crime of violence and the possibility of escape were exigent circumstances that justified the warrantless entry. *Id.* at 393.

In *United States v. Rubin,* 474 *F.*2d 262 (1973), the Third Circuit offered standards for determining the validity of warrantless home entries in drug cases based on exigent circumstances:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail, and (5) the ready

destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." [*Id.* at 268–69 (citations omitted).]

In *Rubin,* the court upheld the warrantless search of a home in the investigation of a "reliable" tip that "a bronze statue containing a large shipment of illicit drugs, from a point somewhere in Europe, would be shipped to a hospital" in the Philadelphia area. As a result of this information, federal agents located a crate at the Philadelphia International Airport answering the general description given to the agents by the informant. *Id.* at 264. The agents removed a small sample of the contents of the statue for chemical analysis. It was confirmed to be hashish. The statue, addressed to a doctor at a local hospital, contained approximately ninety pounds of hashish. The crate was then resealed and placed under constant surveillance. The following ensued:

[A] pickup was made on July 28, 1971, at approximately 4:00 p.m., by two men, one of whom was identified as * * * Agnes * * * a defendant herein. The crate was taken from the Airport by defendant [ ] Agnes, by car, to 1819 S. 9th Street in Philadelphia, where it was unloaded at about 5:00 p.m. Shortly thereafter, a custom's agent was dispatched at approximately 5:10 p.m. on July 28, 1971, to prepare and procure a search warrant. Subsequently, defendant Agnes left the South Ninth Street address at about 6:00 p.m., without the crate, but in his car. He was, of course, placed under surveillance. During this surveillance, Agent Bergin testified that "it appeared to us that the vehicle [Agnes' car] was becoming evasive and aware we were behind it, and we stopped it and took the operator in custody." The actual arrest occurred at a gasoline station (some six blocks from Agnes' home), between 6:20 and 6:30 p.m. As he was being taken into custody, Agnes yelled to the gas station attendants and spectators, "Call my brother". The agents testified that at this point they reasonably believed that there existed the "threat of destruction" to the "hashish", which had been delivered to defendant Agnes' home. Thus, the agents proceeded to enter defendant's home in order to preserve the evidence contained therein. [*Id.*]

Inside, the officers found the co-defendants, including Rubin, "in the process of packing the 'hashish' for possible distribution." *Ibid.*

The court upheld the warrantless search on the basis that "the customs agents 'might reasonably have believed that [they] were] confronted with an emergency, in which the delay neces-

sary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" *Id.* at 269 (citing *Schmerber v. California*, 384 *U.S.* 757, 770, 86 *S.Ct.* 1826, 1835, 16 *L.Ed.*2d 908, 919–20 (1966)). The court relied on the fact that when arrested, Agnes yelled "call my brother" to individuals present at the scene. 474 *F.*2d at 269. Based on this utterance, the court concluded that "[i]t was not unreasonable for agents to believe that this might well be a signal to alert persons still at 1819 South 9th Street of Agnes' arrest and of imminent police intervention into their activities, even though the agents did not see a telephone call made and had no knowledge of the existence of any brother of Agnes." *Ibid.* It further observed, "[t]he nature of the narcotics business necessitates rapid distribution of goods in order to prevent apprehension. Hashish is easily destroyed." *Ibid.*[1]

---

[1]Numerous other circuit courts of appeal have upheld warrantless home entries in drug cases on the basis of exigent circumstances. See *United States v. Socey*, 846 *F.*2d 1439, *cert. denied*, —— *U.S.* ——, 109 *S.Ct.* 152, 102 *L.Ed.*2d 123 (1988) (warrantless entry justified where court determined police had "objectively reasonable belief" of imminent destruction of evidence); *United States v. Cattouse*, 846 *F.*2d 144 (2d Cir.) *cert.* denied, —— *U.S.* ——, 109 *S.Ct.* 316, 102 *L.Ed.*2d 335 (1988) (warrantless in-home arrest of defendant upheld in "buy bust" drug case where agents "concluded that there was a substantial risk that [defendant], or another person, would be able to leave the building undetected and remove the marked buy money;" exigent factors included observation that "narcotics dealers are frequently armed"); *United States v. Aquino*, 836 *F.*2d 1268 (10th Cir.1988) (warrantless home entry justified by police officers' "reasonable basis for believing" that narcotics would be destroyed prior to estimated time necessary (three hours) to procure a warrant); *United States v. Chavez*, 812 *F.*2d 1295 (10th Cir.1987) (warrantless search of garage upheld where "officers could reasonably believe that to ensure their own safety and to protect against the loss of incriminating evidence on the premises, an immediate and forcible entry was necessary"); *United States v. Mabry*, 809 *F.*2d 671 (10th Cir.), *cert.* denied, 484 *U.S.* 874, 108 *S.Ct.* 33, 98 *L.Ed.*2d 164 (1987) (warrantless entry into and "protective sweep" of defendant's home justified where "experience had taught that if the [drug] sellers did not return to the residence of the source within a short period of time, the supplier would either proceed to destroy the cocaine on the premises and secret the cash or depart the premises with the cocaine and the cash"); *United States v. Webster*, 750 *F.*2d 307 (5th Cir.1984) (warrantless search justified in

Although the exigent circumstance in *Rubin*—the threatened destruction of the drugs—was "police-created" in the sense that the custom agents' arrest of defendant at the gas station precipitated the concern that the drugs in his residence might be destroyed, the court apparently did not perceive that the agents' role affected its conclusion that the warrantless entry

course of "immediate, ongoing investigation" where "[a]gents * * * testified unequivocally that they feared the destruction of evidence;" important factors include "(1) the agents' subjective belief; (2) information indicating that suspects are aware that police are on their trail; and (3) the knowledge that 'efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic;'" *United States v. Palumbo,* 735 F.2d 1095 (8th Cir.), *cert.* denied, 469 *U.S.* 934, 105 *S.Ct.* 332, 83 *L.Ed.2d* 268 (1984) (warrantless entry and arrest justified where "officers fear[ed]" defendant would become suspicious when party cooperating with authorities failed to return at expected time and that he would destroy or remove the cocaine before they could obtain a warrant); *United States v. Cuaron,* 700 F.2d 582 (10th Cir.1983) (warrantless search upheld where agents had "reasonable grounds to believe [defendant] might become alarmed and either destroy" cocaine or leave with the drugs and money if co-conspirator cooperating with agents failed to return as expected); *United States v. Curran,* 498 F.2d 30 (9th Cir.1974) (threat of imminent destruction or removal of marijuana, and discovery by occupant of dwelling of investigation, constituted exigent circumstances to justify warrantless search); *United States v. Doyle,* 456 F.2d 1246 (5th Cir.1972) (warrantless search justified where defendant was under investigation for possession of narcotics, and informant notified police that defendant was aware of the investigation and was planning to leave town, thus threatening the destruction of evidence and Doyle's departure). *But see United States v. Munoz–Guerra,* 788 F.2d 295 (5th Cir.1986) (claim of exigency rejected where police created exigency and court was "unable to construct even so much as a hypothetical justification for [their] actions;" *United States v. Driver,* 776 F.2d 807 (9th Cir.1985) (warrantless search not justified by "exigent circumstances" exception where government failed to prove that removal or destruction of narcotics was imminent); *United States v. Collazo,* 732 F.2d 1200 (4th Cir.1984), *cert.* denied *sub nom.* 469 *U.S.* 1105, 105 *S.Ct.* 777, 83 *L.Ed.2d* 773 (1985) (claim of exigency rejected where there was "ample opportunity to obtain a warrant" and where court determined that the government created the exigency); *United States v. Velasquez,* 626 F.2d 314 (3rd Cir.1980) (warrantless arrest and search in home invalid where "there [was] nothing in [the] record to suggest that the contraband was about to be destroyed"); *United States v. Rosselli,* 506 F.2d 627 (7th Cir.1974) (warrantless entry into apartment not justified where evidence did not "adequately explain why no attempt to obtain a warrant was made, or why no consideration was given to placing the defendant's apartment under surveillance while an attempt to secure a warrant was being made").

was justified. Other courts, however, have frequently expressed a concern that police-created exigent circumstances, particularly where the officers' conduct was unreasonable or unnecessary, would not justify a warrantless entry. *See, e.g., United States v. Aquino,* 836 *F.*2d 1268, 1272 (10th Cir.1988) ("An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of an unknown suspect should be \* \* \* supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse."); *United States v. Munoz–Guerra,* 788 *F.*2d 295, 298 (5th Cir.1986) ("the government [can]not justify a warrantless search on the basis of exigent circumstances of its own making"); *United States v. Webster,* 750 *F.*2d 307, 327 (5th Cir.1984) *cert.* denied, 471 *U.S.* 1106, 105 *S.Ct.* 2340, 85 *L.Ed.*2d 855 (1985) ("Agents, of course, cannot deliberately create exigent circumstances in order to subvert the warrant requirements of the Fourth Amendment"); *United States v. Curran,* 498 *F.*2d 30, 34 (9th Cir.1974) ("If exigency arises because of unreasonable and deliberate delay by officers, it is not an exigent circumstance capable of dispensing with the requirement of a warrant."); *accord People v. Foskey,* 175 Ill.App.3d 638, 125 Ill.Dec. 82, 529 *N.E.*2d 1158, 1161 (1988) ("the police may not through their own actions create the exigent circumstances used to justify the arrest"); *People v. Lott,* 102 *A.D.*2d 506, 478 *N.Y.S.*2d 193, 197 (App.Div.1984) ("[p]olice 'cannot by their own conduct create an appearance of exigency'"); *Latham v. Sullivan,* 295 *N.W.*2d 472, 478 (Iowa Ct.App.1980) ("the State may not profit by an officer's choice to forego the constitutional process by attempting to create an exigency by his own actions"); *cf.* Baldassano, *Police Created Exigencies: Implications for the Fourth Amendment,* 37 *Syracuse L.Rev.* 147, 149 (1986) ("the current approach to analyzing warrantless entry cases creates a genuine possibility that

police officers *will* justify warrantless entries with exigencies caused by police conduct").

Two Circuit Courts of Appeals have specifically attempted to distinguish between police-created exigent circumstances designed to subvert the warrant requirement and police-created exigencies that naturally arise in the course of an appropriate police investigation. In *United States v. Webster*, 750 *F.*2d 307 (5th Cir.1984), *cert.* denied *sub nom.* 471 *U.S.* 1106, 105 *S.Ct.* 2340, 85 *L.Ed.*2d 855 (1985), defendants sought to suppress evidence found in the course of a warrantless search of their hotel room, arguing that Drug Enforcement Administration agents deliberately delayed obtaining a search warrant and deliberately refrained from apprehending defendants until they entered the room, whereupon the agents made a warrantless entry and search and uncovered evidence of their involvement in illegal drug activity. The Fifth Circuit rejected defendants' contentions and upheld the warrantless entry and search:

> Agents, of course, cannot deliberately create exigent circumstances in order to subvert the warrant requirements of the fourth amendment. Our first concern in analyzing a claim of manufactured exigency is whether agents could have obtained a search warrant prior to the development of the exigent circumstances upon which they relied.
>
> \* \* \* \* \* \* \* \*
>
> Moreover, an officer's failure to avail himself of an early opportunity to obtain a warrant will not automatically preclude him from relying on exigent circumstances that may arise thereafter. ("The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.") That the exigency was foreseeable at the time the decision was made to forego or postpone obtaining a warrant does not, by itself, control the legality of a subsequent warrantless search triggered by that exigency.
>
> \* \* \* \* \* \* \* \*
>
> Warrantless searches based on exigent circumstances must, of course, be reasonable, and "the opportunity to obtain a warrant is one of the factors to be weighed." We have recently recognized that the reasonableness inquiry should also be informed by the nature of the investigation of which the warrantless activity is a part: a delay in obtaining a warrant is more likely to be reasonable when part of an "immediate, ongoing investigation" rather than a "planned" or "routine" search or arrest. As we said in [*United States v. Hultgren*, 713 *F.*2d 79 (5th Cir.1983)]:

> Indeed, in the case of the immediate ongoing investigation, new suspects and evidence of crimes committed became known only later in the investigation. Thus, unlike the case of the "routine" felony arrest, where a given individual and a distinct crime is involved, the fluidity of an ongoing investigation of the distribution of narcotics makes the obtaining of an adequate search warrant more difficult to time in the flow of events. While the possibility of discovering additional participants or evidence of crimes does not negate the warrant requirement, we find that it is one factor to weigh in determining the reasonableness of the government's warrantless arrest. [*Id.* at 87.]
>
> As noted, we treat cases differently where agents do more than delay attempts to obtain a warrant and then act upon exigent circumstances that naturally arise. Where agents create the exigency themselves, warrantless activity is per se unreasonable and we require suppression of any evidence obtained thereby. [750 *F.*2d at 327–28 (citations omitted).]

An illuminating discussion of police-created exigent circumstances that were held to justify a warrantless home-entry and search is found in *United States v. Socey*, 846 *F.*2d 1439 (D.C.Cir.), *cert.* denied, —— *U.S.* ——, 109 *S.Ct.* 152, 102 *L.Ed.*2d 123 (1988). In that case District of Columbia police officers had learned from informants that defendants were major distributors of cocaine and marijuana in Virginia, Maryland, and the District of Columbia. According to the informant, defendants purchased the drugs in Florida from a Cuban supplier and transported the drugs by automobile to defendant Robert Socey's residence on Military Road in the District of Columbia. In March 1987, District police officers learned that two of the defendants had left Florida in a brown Datsun containing large quantities of drugs. *Id.* at 1441–42. Police officers maintained surveillance on Socey's residence. When the Datsun arrived, additional officers were summoned to watch the house and were instructed to stop the Datsun if it was driven out of the area. One officer was dispatched to secure a search warrant. *Id.* at 1442.

Later that day defendant Soper was observed depositing three large trash bags in the trunk of the Datsun. He then entered the car and drove down the street. Police officers stopped him when he was beyond view of the Socey residence. A search revealed twenty-four pounds of marijuana, scales, packaging materials, and $5,000 in cash. *Ibid.* Shortly there-

after another officer stopped a Camaro automobile after it left the Socey residence. Although the stop occurred at the end of the street, it was within view of the Socey residence. Two police cars arrived to assist the officer, and the activity attracted the attention of neighbors, who began to congregate and view the events. *Ibid.*

The officers were fearful that the "commotion" would alert the occupants of Socey's house to the presence of police. To prevent the destruction of evidence, they entered the house. The officers gathered the occupants on the first floor into one room. They entered a bedroom and observed defendants Robert and Daniel Socey "shaving marijuana off of large bales, weighing the drug and bagging it." The officers placed both Soceys under arrest. *Id.* at 1442–43. Shortly thereafter the officers in the house were advised that a warrant had been secured and that a full search could be commenced.

Defendants Robert and Daniel Socey moved to suppress the evidence seized prior to issuance of the warrant, as well as that obtained pursuant to the warrant. Although the prosecution argued that exigent circumstances—the fear that defendants were alerted to the police presence and would destroy evidence—justified the warrantless entry, defendants contended that "the police improperly created the exigency by stopping the Camaro 'unnecessarily and unreasonably' close to their house." *Id.* at 1448. The District Court granted the suppression motion, but the Court of Appeals reversed, reasoning that even if the exigency was "police created," the officers conduct was reasonable and not designed deliberately to subvert the warrant requirement:

> It is true that police officers cannot deliberately create exigent circumstances to justify a warrantless entry into a private dwelling. However, there is a key distinction between cases "where exigent circumstances arise naturally during a delay in obtaining a warrant and those where officers have deliberately created the exigent circumstances." This case falls into the former category.
>
> We reject the Soceys' claim that Detective Brenner's decision to stop the Camaro was deliberate, in the sense that his underlying purpose was to subvert the warrant requirement. As an initial, factual matter, we note that the district

court did not, in any sense, suggest that Brenner's actions were designed to create a commotion or, more generally, to manufacture an exigency. At most, the court stated that the actions of the police were "possibly ill-advised." The defendants' contrary claims find no support in the record.

Reviewing the totality of the circumstances, we find that Brenner's decision to stop the Camaro was anything but "manufactured." After Zattau and Hayes left their surveillance positions to pursue Soper's Datsun, Brenner was faced with the incompatible duties of watching the house and stopping a departing automobile, possibly containing contraband, out of sight of the house. Under the circumstances, he did the best he could by stopping the car some distance from the house, but still in view to maintain his watch.

This case does not involve the kind of deliberate conduct that courts have found to constitute police creation of exigent circumstances. *See, e.g., Thompson,* 700 F.2d at 950–51 (undercover agent confronting suspect knowing that suspect will recognize him); *United States v. Rosselli,* 506 F.2d 627 (7th Cir.1974) (agents' knocking at apartment door and identifying themselves as police officers unnecessarily created emergency situation, especially since there was "no attempt to obtain a warrant" and "no consideration ... given to placing the defendant's apartment under surveillance while an attempt to secure a warrant was being made."); *United States v. Curran,* 498 F.2d 30 (9th Cir.1974) (police officers contemplated warrantless search and seizure at the outset and made their presence known to occupants in order to create exigency).

Perhaps Detective Brenner could have pursued a different course, less likely to expose the police presence to the occupants in the house. But this calculation, made in hindsight, is not relevant to our inquiry. Moreover, the police should not be taxed with having failed to cover every eventuality and to arrange a sufficiently broad dragnet to permit all persons leaving the house to be apprehended in perfect silence. As long as police measures are not deliberately designed to invent exigent circumstance, we will not second-guess their effectiveness.

Because the police had an objectively reasonable belief that the destruction of narcotics was imminent, and thus they "could not brook the delay incident to obtaining a warrant," they were justified in entering the Socey house without a warrant and securing the premises. [846 *F.*2d at 1448–49 (citations omitted).]

## III.

Preliminarily, we note that the trial court's disposition of the suppression motion appears to be based predominantly on its view that the officers should have attempted to obtain a search warrant on the strength of the facts learned from the informant. In the course of its ruling the court observed:

So based on the kind of information derived from that evening, the experiences of Mr. Thompson, a detective and with his informant on past occasions, the

experience of Officer Lemon with the house itself, with the knowledge and expertise he had as an undercover police investigator, they certainly appeared to have had a sufficient basis to have sought the search warrant.

Similar observations appear throughout the trial court's ruling, which concludes with a citation to *State v. Williams*, 168 *N.J.Super.* 352, 358 (App.Div.1979), where the court supported its refusal to condone a warrantless search by referring to the failure of the police officers to have obtained a search warrant. Although the trial court referred to the events at the front door, it did not attempt to resolve the significant differences between the testimony of defendant and that of Detective Lemon. The court's only reference to the "exigent circumstance" doctrine related not to the events at the front door but rather to the facts obtained from the informant, the court observing that *those* facts did not indicate the existence of any exigency. We are thus left with the clear sense that the trial court did not focus substantially on the issue that was dispositive in the Appellate Division—whether exigent circumstances existed at the moment of entry that, if combined with probable cause, could justify the warrantless entry and arrest.

 Moreover, we disagree with the trial court's conclusion that the facts gleaned from the informant were sufficient to establish probable cause for a search warrant. Although the informant's credibility and basis of knowledge are no longer mandatory elements of probable cause, *see State v. Novembrino*, 105 *N.J.* 95, 122 (1987) (adopting the totality-of-the-circumstances test as the standard for determining probable cause), the unverified facts revealed by this informant were plainly insufficient to support issuance of a search warrant. See *id.* at 122–29.

Apparently recognizing that the trial court's rationale for suppressing the evidence was faulty, the Appellate Division did not rely on any fact-finding by the trial court but accepted Officer Lemon's version of the critical events. 226 *N.J.Super.* at 456. The Appellate Division acknowledged that under the circumstances the police officers "had the right to investigate

the tip by attempting to purchase drugs at the specified address." *Id.* at 457. The Appellate Division also acknowledged that exigent circumstances inadvertently resulting from "police action of reasonably anticipated potential benefit to an investigation" may justify a warrantless entry and search based on probable cause. *Id.* at 461.

The State argued that all of the facts learned from the informant, defendant's appearance at the door dressed as the informant described him, his clenched fist suggesting to the officers the presence of drugs, and his turning and fleeing up the stairs when the officers identified themselves combined to afford the officers probable cause to believe defendant was engaged in drug distribution. The State asserts that the existence of probable cause, coupled with the exigent circumstance that defendant would try to destroy the drugs before he was apprehended, justified the warrantless entry and arrest.

The Appellate Division did not consider the issue of probable cause, *id.* at 461, focusing instead on whether the exigent circumstance relied on by the State—the threatened destruction of the drugs—was impermissibly created by the police. The court determined, apparently based on its review of the evidence, that the officers' identification of themselves to defendant had no "reasonably anticipated potential benefit to the * * * investigation." The court implied that the officers' disclosure to defendant may have been deliberately designed to create an "exigent circumstance."

Defendant did not rise to the bait, and we perceive no reasonably anticipated potential benefit to the police investigation from the announcement, at that time, that they were police officers. Surely, the police could not reasonably have expected a confession and surrender as a response to their status and presence. We are not satisfied that the exigency in this case was an unintended and collateral residual effect of their announcement. [*Ibid.*]

Our difficulty with the Appellate Division's disposition of this issue does not derive from any difference concerning the degree of caution that must be exercised in reviewing a claim that exigent circumstances resulting from a police investigation support a warrantless search of a home. We acknowledge, as

other courts have acknowledged, the potential for abuse inherent in the exigent-circumstance exception to the warrant requirement and share the concern that "the police not be placed in a situation where they can create the exception, because well-meaning police officers may exploit such opportunities without sufficient regard for the privacy interests of the individuals involved." *United States v. Aquino, supra,* 836 *F.*2d at 1272.

Rather, our disagreement is based on the Appellate Division's assumption, without any fact-finding by the trial court focusing on the critical issues, that although the attempted drug purchase was a reasonable police-investigative effort, 226 *N.J.Super.* at 457, the officers' disclosure of their identity to defendant was unreasonable as a matter of law and may have been done deliberately to create the exigency on which the State relies. *Id.* at 461. In our view, the record of the suppression hearing does not lead inescapably to the Appellate Division's conclusion. *Cf. State v. Bruzzese,* 94 *N.J.* 210, 219 (1983) (adopting standard of objective reasonableness in evaluating appropriateness of police officers' conduct), *cert.* denied, 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984). More importantly, it is an issue that should be resolved initially by the trial court that heard the testimony and had the opportunity to observe and evaluate the witnesses. As we have stated, because of the trial court's belief that the officers should have obtained a search warrant based solely on the informant's tip, we do not have the benefit of adequate fact-finding by the trial court, focused appropriately on the issues that determine the validity of the warrantless entry.

Accordingly, we remand the matter to the Law Division to resolve the pivotal factual issues that affect the justification for the warrantless entry—the existence of probable cause and exigent circumstances, including whether the exigency, if it existed, was permissibly or impermissibly created by the police officers—and to redetermine the suppression motion. The trial

court must also resolve the conflict in testimony concerning the events at the front door, focusing on whether defendant fled from the officers in a manner that evidenced involvement in criminal activity, or retreated unremarkably into the house after the officers identified themselves. The trial court may in its discretion permit the record to be supplemented.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.