251 N.J. Super. 136 (1991)
597 A.2d 555
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM B. RICE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 1991.
Decided October 10, 1991.
*137 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Wilfredo Caraballo, Public Defender, attorney for appellant (Alan Flexer, Designated Counsel, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Arthur S. Safir, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Tried by a jury under Essex County Indictment No. 3016-9-88, defendant was convicted of possession of cocaine and possession of cocaine with intent to distribute it. The trial court sentenced defendant to three years imprisonment for possession with intent to distribute, into which the charge of simple possession was merged. Defendant now appeals contending that the trial court erred in denying his motion to suppress evidence and that his sentence was manifestly excessive. We now reverse the conviction.
Anthony Ricci, an Essex County Sheriff's Officer on loan to the prosecutor's office, was the sole witness at the suppression hearing. He testified that before 1:00 p.m. on June 8, 1988, the prosecutor's office received an anonymous tip that drugs were being sold out of 50 Oraton Street. Ricci and two other officers immediately went to the scene and placed the house under surveillance. They were not in uniform. Ricci observed a male approach the house and enter a screened vestibule-porch. A door to the interior of the house opened for approximately one minute and thereafter the male left the premises. Ricci and the State contend that what Ricci observed was a drug transaction. *138 It is clear, however, that Ricci never saw anything pass from the person in the house to the male who was standing on the porch. Ricci and the State contend that the visiting male took currency from his pocket, giving it to the person within the house. However, the uncertain and equivocal nature of Ricci's testimony is revealed by the following excerpt:
Like I stated before, I observed a black male entering the house, apparently going into his pocket, taking apparently what appeared to be some currency out. Went through the first door, knocked on the second door like a transaction or something transpired. He just turned and walked back out.
Subsequently, Ricci also observed a couple, a male and a female, enter the house and leave shortly thereafter. Nothing else was observed regarding that couple.
After the couple left the house, the police decided to investigate more closely. They walked up to the house and knocked on the door. When the door was opened they announced they were the police. According to Ricci, he heard scurrying inside the house and someone shout police. Contemporaneously a person inside attempted to push the door closed. Ricci and his partners pushed the door open, entered the house, found drugs in an upstairs sewing room and made arrests.
The motion judge determined that the anonymous tip, the surveillance which revealed activity consistent with drug trafficking and "that additional furtive conduct or activity ... on behalf of the defendants" when they reacted to the presence of police at the door, constituted probable cause. Relying on State v. Royal, 115 N.J. Super. 439, 280 A.2d 201 (App.Div. 1971), certif. denied, 59 N.J. 294, 281 A.2d 807 (1971), and State v. Boswell, 115 N.J. Super. 253, 279 A.2d 125 (App.Div. 1971), the motion judge denied the motion to suppress. The judge did not address the issue of exigent circumstances. See State v. Hutchins, 116 N.J. 457, 561 A.2d 1142 (1989).
On appeal, defendant contends that the police lacked probable cause and, even if probable cause existed, exigent circumstances did not exist to justify a warrantless entry.
*139 We observe at the outset that Royal and Boswell are distinguishable from the present case. Both cases involved actual flight by the premises' inhabitants. In Royal, "two or three individuals ran out of the back of the house and fled over a fence in the rear yard." 115 N.J. Super. at 441, 280 A.2d 201. In Boswell, defendant "ran back into the building, down the stairs and into the basement." 115 N.J. Super. at 255, 279 A.2d 125. Moreover, neither Royal or Boswell involved an attempt to bar the police from entering the premises by closing the door.
The police did not have probable cause to believe that drugs were being sold from 50 Oraton Street when they approached the house and knocked on the door. Their information at that time was limited to an anonymous telephone tip and the visits to the house by a couple and an unaccompanied male. The police observed no exchange between the visitors and occupants of the house. Recognizing the lack of probable cause up to the knock on the door, the motion judge found that the occupants' reaction to the announced police presence provided additional information which ripened reasonable suspicion into probable cause. According to the motion judge, "occupants inside began fleeing, yelling police and attempting to close the door to prevent any entry." We note that the trial court incorrectly determined that the occupants "began fleeing" when Ricci identified himself as a policeman. Ricci testified that "there was a little scurry in the back." There was no evidence of flight as in Royal and Boswell, and the word scurry is too general to have much probative significance. Cf. State v. Lund, 119 N.J. 35, 47, 573 A.2d 1376 (1990) (furtive behavior does not give rise to reasonable suspicion of criminal activity). We suggest that the presence of three policemen at their threshold would excite many innocent occupants of a residence. Cf. State v. Schlosser, 774 P.2d 1132, 1137 (Utah 1989) (not uncommon for occupants of a vehicle to be nervous and excited when confronted by police).
*140 Warrantless searches are prima facie invalid. The present case involves police entry of a private residence, the protection of which is at "the very core" of the Fourth Amendment. Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734, 739 (1961) ("at the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion"). Recently, in State v. Hutchins, 116 N.J. 457, 561 A.2d 1142 (1989), our Supreme Court emphasized the privileged position of the home.
In State v. Bolte, 115 N.J. 579 [560 A.2d 644] (1989), a case involving application of the exigent circumstances exception to a warrantless entry into the home of a defendant suspected of various motor vehicle offenses, we recently reiterated the principle that "warrantless searches or arrests in the home must be subjected to particularly careful scrutiny." Id. at 583 [560 A.2d 644]. As the United States Supreme Court has acknowledged, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972).
Accordingly, it is well established that "searches and seizures inside a home without a warrant are presumptively unreasonable," Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980), and hence "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." Welsh v. Wisconsin, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 743 (1984).
Id. at 462-463, 561 A.2d 1142.
The narrow issue in the present case is whether the occupants' attempt to bar the police by closing the door may provide the missing ingredient to convert suspicion into probable cause. We conclude that in the circumstances of this case it may not.
In Tompkins v. Superior Court, 59 Cal.2d 65, 378 P.2d 113, 27 Cal. Rptr. 889 (1963), the San Francisco Police Department had grounds to suspect Tompkins' involvement in drug trafficking. Inspector Martin went to Tompkins' apartment without a warrant to arrest or search. When Martin identified himself as a police officer, Tompkins "made a motion with his arm to the left and slammed the door shut." Id., at 67, 378 P.2d at 115, 27 Cal. Rptr. at 891. Martin kicked in the door, entered the apartment and observed drug contraband.
*141 The California Supreme Court reversed the denial of Tompkins' motion to suppress the evidence. In an opinion by Justice Traynor, the Court recognized the anomaly inherent in allowing the assertion of a constitutional right to provide the basis for abrogation of that right.
Petitioner's apparent motioning of someone away from the door and closing it in Inspector Martin's face did not provide the missing elements of reasonable cause to believe that petitioner was guilty of a felony. There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer. If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest the occupant and search his home, such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion. Although hindsight indicates that petitioner's motive in closing the door was to conceal evidence of guilt, Inspector Martin had no reasonable cause so to believe until he kicked the door open. It is settled, however, that a search cannot be justified by what it turns up.
Ibid. See also People v. Gaines, 265 Cal. App.2d 642, 71 Cal. Rptr. 468 (1968), cert. denied, 394 U.S. 935, 89 S.Ct. 1212, 22 L.Ed.2d 467 (1969) ("[t]he attempt by Jackson to prevent entry by closing the apartment door could not be considered by the arresting officers, because that neutral act was merely an assertion of Jackson's right against search without a warrant"); People v. Verrette, 224 Cal. App.2d 638, 36 Cal. Rptr. 819, 821 (1964).
Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) involved more than an attempt to bar the police at the threshold. In that case, federal narcotics officers had grounds to suspect that Blackie Toy was involved in drug distribution, but they lacked probable cause for the issuance of a warrant. The agents went to a laundry which they suspected belonged to Blackie Toy. Agent Wong rang the bell. When Toy opened the door, Wong said that he was calling for laundry. Toy replied that he wasn't open yet and told Wong to return later. As Toy started to close the door, Wong identified himself as a narcotics agent. Toy slammed the door and ran down the hallway. The officers broke open the door and pursued Toy down the hallway to his living quarters and into *142 Toy's bedroom. Although the agents found no narcotics, Toy, then under arrest, made certain incriminating statements which led to other inculpatory evidence.
The Supreme Court affirmed the Court of Appeals' determination that the agents lacked probable cause to arrest Toy and affirmed the suppression of Toy's statement and the drugs to which that statement led the authorities. In doing so, the Supreme Court rejected the Government's argument that Toy's flight down the hall corroborated the agents suspicions and provided probable cause. The Court noted that "Toy's refusal to admit the officers and his flight down the hallway thus signified a guilty knowledge no more clearly than it did a natural desire to repel an apparently unauthorized intrusion." Id. at 483, 83 S.Ct. at 415, 9 L.Ed.2d at 452. The Court also observed that:
A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked. Cf. Henry v. United States, 361 U.S. 98, 104, 4 L.Ed.2d 134, 139, 80 S.Ct. 168 [172]. That result would have the same essential vice as a proposition we have consistently rejected  that a search unlawful at its inception may be validated by what it turns up.
Id. at 484, 83 S.Ct. at 415, 9 L.Ed.2d at 453. See United States v. Rosselli, 506 F.2d 627, 631 (7th Cir.1974) (a suspect has an "unquestioned right to refuse admittance to his home unless a demand was supported by a warrant"). But cf. United States v. Cisneros, 448 F.2d 298, 302-303 (9th Cir.1971) ("refusal of entrance to a known law officer can be considered as a factor in establishing probable cause").[1]
In State v. Lewis, 116 N.J. 477, 561 A.2d 1153 (1989) a uniformed police officer prevented an occupant from closing a *143 door by placing his foot on the door saddle between the door and the jamb. In that position, the officer was able to see white powder on the kitchen table. The Court did not discuss whether an attempt to bar police entry could constitute an element of probable cause. But it impliedly rejected the proposition, because if an officer lawfully could resist an attempt to close a door in his face, then the officer in Lewis had a right to be on defendant's threshold with his foot in the doorway. In that event, the drugs on the kitchen table would have been subject to seizure as in plain view. State v. Lewis, supra, 116 N.J. at 485-486, 561 A.2d 1153 ("Thus the officer's observation of the evidence does not advance the State's position unless the police were authorized forcibly to prevent the defendant from closing the door, and their subsequent seizure of the item observed depends on the officers' right to make a warrantless entry.")
In State v. Flint, 126 N.J. Super. 182, 313 A.2d 615 (App.Div. 1973), aff'd o.b., 64 N.J. 170, 313 A.2d 615 (1974), we reversed the denial of defendant's suppression motion. The police, acting on a tip, placed a motel room under surveillance. An unknown person approached the door and knocked on it. When defendant opened the door, the police approached it. Seeing the police, defendant attempted to slam the door closed yelling back into the room that "the cops are here clean up." Id. 126 N.J. Super. at 184, 313 A.2d 615. The police pushed open the door and searched the room. We held that the facts did not establish probable cause, and distinguished State v. Royal and State v. Boswell, supra.
The exercise of a constitutional right may not be the basis of an adverse inference. Thus, comment by the prosecution on a defendant's silence and instruction by the court that silence is evidence of guilt are forbidden by the Fifth Amendment. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Comment on a defendant's silence "is a penalty imposed by the courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." Id. *144 at 614, 85 S.Ct. at 1232-1233, 14 L.Ed.2d at 109-110. Similarly, in State v. Blue, 129 N.J. Super. 8, 322 A.2d 174 (App.Div. 1974), certif. denied, 66 N.J. 328, 331 A.2d 27 (1974), we reversed defendant's conviction and remanded for a new trial in part because we found it to be "improper to permit the State under such circumstances to use defendant's constitutional right to request counsel as evidence of guilt." Id., 129 N.J. Super. at 11, 322 A.2d 174.
In the present case the police had no warrant and no probable cause when they knocked at defendant's door. We conclude that the occupants had a right to bar the police from physical or visual access to the interior of their home and that the exercise of that right may not be used to elevate reasonable suspicion to probable cause. The motion to suppress should have been granted.
The judgment of conviction is reversed and the matter is remanded for further proceedings.[2]
NOTES
[1] The Cisneros Court cited Martone v. United States, 396 F.2d 229 (1st Cir.1968) and Rodriguez v. Hanchey, 359 F.2d 724 (5th Cir.), cert. denied 385 U.S. 884, 87 S.Ct. 179, 17 L.Ed.2d 112 (1966), as authority for that statement. But these cases do not support the breadth of the Cisneros ruling. In Martone the police had a warrant. In Rodriguez the police were authorized to enter the residence when they observed through a window a fugitive whom they had probable cause to arrest.
[2] In light of our determination that the police lacked probable cause to search, we do not reach the issue of exigent circumstances to search without a warrant. See State v. Hutchins, 116 N.J. 457, 561 A.2d 1142 (1989).