231 N.J. Super. 284 (1989)
555 A.2d 681
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL STUPI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1989.
Decided February 27, 1989.
*286 Before Judges KING and SKILLMAN.
Alfred A. Slocum, Public Defender, attorney for appellant (Ronald S. Sampson, Designated Counsel, of counsel and on the brief).
Alan A. Rockoff, Middlesex County Prosecutor, attorney for respondent (Christine A. Agocs, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was convicted by a jury of second degree robbery, in violation of N.J.S.A. 2C:15-1, and resisting arrest, in violation of N.J.S.A. 2C:29-2. A codefendant, James Michael Mazza, was acquitted of the robbery charge. On the robbery conviction, defendant was sentenced to an indeterminate term not to exceed 10 years to be served at the Youth Correctional Institution Complex. On the conviction for resisting arrest, defendant was sentenced to a concurrent 350 day term.
The robbery was committed upon Michael Sekulic, a taxicab driver. Sekulic picked up defendant and Mazza at Nardone's Bar in Avenel, one of several places the two young men had been drinking on the night of the crime. When the cab stopped at an intersection, defendant grabbed Sekulic around the neck, pulled his head by the hair and demanded his money. After a brief struggle, Sekulic placed his money ($135 to $140) into a hand (he could not tell who took the money but thought it was Mazza). Mazza then fled from the cab on foot. Defendant remained in the cab, demanded more money and struck Sekulic several times with his forearm on the back of his head. Defendant then also fled from the cab on foot.
Sekulic called his dispatcher and reported the robbery. The Woodbridge police responded to the scene and discovered two *287 sets of footprints in the snow leading a short distance to 25 Pershing Avenue in Iselin, where Mazza resided with his parents. The officers knocked and a short time later Mazza opened the door. The police observed that the clothing worn by defendant and Mazza matched Sekulic's description of the robbers' clothing. Consequently, the police placed both men under arrest.
After administering Miranda warnings, the police asked Mazza where the proceeds of robbery were hidden. Mazza stated that the money might be in the basement. Consequently, the police went into the basement where they observed mud on a cabinet door under the staircase. The police opened the door and $67 in bills, later identified as proceeds of the robbery, fell out of the cabinet.
Both defendants testified on their own behalf. Mazza testified that defendant suggested that they rob the taxicab driver, but that he urged defendant not to do it. This was corroborated by Sekulic's testimony that he thought he heard Mazza whisper: "Don't do it." According to Mazza, defendant nevertheless robbed Sekulic and attempted to hand the money to Mazza. However, Mazza refused to accept the money and fled from the cab.
Defendant testified that at one point during the evening Mazza suggested that they call a taxicab and try to "beat the taxicab driver" (a slang expression referring to the commission of a robbery). However, defendant had an alcohol blackout during the time period when the robbery was committed and, therefore, had no recollection of the crime.
On appeal, defendant argues that the trial court erred in denying his motion to suppress evidence of the proceeds of the robbery found in Mazza's basement. We agree with defendant that the warrantless search of Mazza's basement violated the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. However, *288 we conclude that admission of the evidence obtained by that search was harmless error.
A warrantless search is presumed to be invalid. State v. Valencia, 93 N.J. 126, 133 (1983). Therefore, the State has the burden to show that such a search "falls within a judicially cognizable exception to the warrant requirement." Ibid. One exception is for a search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Another is for a search under exigent circumstances where the police do not have sufficient time to obtain a warrant. Warden v. Hayden, 387 U.S. 294, 298-300, 87 S.Ct. 1642, 1645-1647, 18 L.Ed.2d 782 (1967).
Even when a warrantless search is justified, it "must be `strictly circumscribed by the exigencies which justify its initiation.'" Mincey v. Arizona, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), quoting Terry v. Ohio, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). Thus, a search incident to an arrest is limited to the person arrested and areas within his reach. Chimel v. California, supra. And where the entry into a dwelling is justified by exigent circumstances, the police may not conduct a search which is broader in scope than the exigency justifying the entry. See Arizona v. Hicks, 480 U.S. 321, 325-327, 107 S.Ct. 1149, 1153-1154, 94 L.Ed.2d 347 (1987).
Mazza voluntarily admitted the police into the house when they knocked on the door. However, even if he had not done so, we would have no hesitancy in concluding that the exigent circumstances exception to the warrant requirement justified the police entry into the dwelling. A robbery had just been committed and a trail through the snow led directly to the Mazza house. Prompt police action was required to apprehend the perpetrators and to prevent destruction of evidence of the crime. See Warden v. Hayden, supra.
But these exigencies did not provide a justification for a search of the cabinet located in the basement. The police had *289 no reasonable basis to believe that there were other participants in the crime or other occupants of the house who might destroy evidence. See Vale v. Louisiana, 399 U.S. 30, 34-35, 90 S.Ct. 1969, 1971-1973, 26 L.Ed.2d 409 (1970). Furthermore, even if the police could reasonably have walked through the house to assure themselves that there were no other occupants who might be a danger to the police or in a position to destroy evidence, see State v. Smith, 140 N.J. Super. 368, 372-373 (App.Div. 1976), aff'd 75 N.J. 81 (1977), this still would not provide a justification for a warrantless search of a closed cabinet. See Mincey v. Arizona, supra; see also State v. Miller, 126 N.J. Super. 572 (App.Div. 1974). Therefore, the trial court should have granted defendant's motion to suppress.
Even though evidence has been admitted in violation of constitutional requirements, a conviction will be sustained if the State can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Thus, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230-231, 11 L.Ed.2d 171 (1963); see also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). "Stated affirmatively, the proposition is that a new trial shall be ordered if there is a reasonable doubt as to whether the constitutional error contributed to the verdict." State v. Macon, 57 N.J. 325, 340 (1971).
We are satisfied that the cash found in Mazza's basement did not contribute to the jury's finding of defendant's guilt. Although the cash was evidence that defendant and/or Mazza had robbed Sekulic, there was overwhelming other evidence to support this conclusion. Sekulic equivocally identified defendant and Mazza as the two passengers in his taxi when the robbery was committed. This identification was corroborated by the manager of Nardone's Bar who testified that he observed *290 defendant and Mazza getting into the cab. Additional evidence that defendant and/or Mazza had robbed Sekulic was provided by the tracks in the snow leading directly from the scene of the crime to Mazza's home, where defendant and Mazza were found wearing clothing which matched Sekulic's description of the clothing worn by the assailants. Furthermore, neither defendant questioned that there had been a robbery and that Mazza and defendant were the two occupants of the vehicle when the robbery occurred. Rather, each defendant attempted to establish that the other defendant might have been the sole perpetrator of the crime. Mazza testified in his own defense that defendant alone had robbed Sekulic. Defendant testified in his defense that Mazza had suggested robbing a taxicab driver earlier in the evening, thus indicating that Mazza may have been the sole perpetrator.
Furthermore, neither defense counsel ever questioned that a robbery had been committed upon Sekulic while Mazza and defendant were the occupants of his taxicab. Rather, defendant's counsel argued in his summation that the jury could find that Mazza was the sole perpetrator. Indeed, he pointed to the fact that the money taken from Sekulic was hidden in a cabinet in Mazza's basement as evidence that Mazza, and not defendant, had been the perpetrator:
Take into account where the money was hidden. It was hidden in the cabinet under the staircase, or adjoining the staircase.... But it was hidden in a place that didn't seem to be very obvious. Isn't it more likely that someone that lived in the house would know a cabinet existed there? More likely a person familiar with the house put the money there.
In addition, defense counsel argued that the jury could find that his client was so intoxicated at the time of the crime that he was not legally responsible for his actions. See State v. Cameron, 104 N.J. 42 (1986).
Thus, even without evidence of the cash found in defendant's basement, there was overwhelming evidence that defendant and/or Mazza had robbed Sekulic. Both defense counsel recognized this overwhelming evidence by attempting to place sole responsibility for the crime on the other defendant rather than *291 disputing that the crime had been committed. Thus, the only real issues before the jury were whether one or both defendants had committed the crime and if defendant was a participant, whether he was too intoxicated to be held legally responsible. The fact that defendant and/or Mazza had taken money from Sekulic, the only issue as to which the cash found in the basement was relevant, was not seriously in dispute. Under these circumstances, we are satisfied that the erroneous admission of this evidence was harmless.
This conclusion is supported by decisions in other jurisdictions finding the admission of evidence obtained in illegal searches to be harmless error under analogous circumstances. See, e.g., People v. Myrick, 638 P.2d 34, 37-38 (Colo.S.Ct. 1981); Nealey v. State, 233 Ga. 326, 211 S.E.2d 286 (Sup.Ct. 1974); State v. White, 399 So.2d 172, 176 (La.Sup.Ct. 1981); State v. Heumiller, 317 N.W.2d 126, 130-132 (S.D.Sup.Ct. 1982); Gauldin v. State, 683 S.W.2d 411, 415 (Tex. Crim. App. 1984); see generally 4 LaFave, Search & Seizure, § 11.7(e) (2nd ed. 1987).
Defendant also argues that the trial court committed reversible error in allowing the State to use Mazza's statement inculpating defendant during Mazza's cross-examination. This argument is clearly without merit and does not require extended discussion. R. 2:11-3(e)(2). A defendant's right to confront the witnesses against him may be denied by the admission into evidence of a codefendant's statement inculpating the defendant. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Young, 46 N.J. 152 (1965). However, a defendant's right of confrontation is violated "only where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for `full and effective' cross-examination." Nelson v. O'Neil, 402 U.S. 622, 627, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971) [emphasis in original]; accord State v. Gardner, 54 N.J. 37, 44-45 (1969). Inasmuch as Mazza testified and was subject to full cross-examination regarding the events on the night of the robbery, defendant was not *292 denied his right to confront the witnesses against him. Moreover, Mazza's trial testimony did not deviate to any substantial degree from the contents of the statement. Therefore, Mazza had already fully inculpated defendant before his out-of-court statement was referred to during cross-examination and the statement added very little, if any, further information.
AFFIRMED.