932 A.2d 33 (2007)
396 N.J. Super. 72
STATE of New Jersey, Plaintiff-Respondent,
v.
John L. NYHAMMER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 2007.
Decided September 6, 2007.
*36 Yvonne Smith Segars, Public Defender for appellant (Sylvia Orenstein, Assistant Deputy Public Defender, of counsel and on the brief).
Stuart Rabner, Attorney General, for respondent (Russell J. Curley, Deputy Attorney General, of counsel and on the briefs).
Before Judges STERN, A.A. RODRÍGUEZ and SABATINO.
The opinion of the court is being delivered by
ARIEL A. RODRIGUEZ, P.J.A.D.
Following a jury trial, defendant John L. Nyhammer was convicted of first degree aggravated sexual assault on A.N., a girl, then nine years old (count one), N.J.S.A. 2C:14-2a(1); four counts of second degree sexual assault (counts two, three, four and five), N.J.S.A. 2C:14-2b; and endangering the welfare of a child (count six), N.J.S.A. 2C:24-4a. The judge merged counts two, three, four and six into count one and imposed an eighteen-year term with a nine-year parole disqualifier. On count five, the judge imposed a concurrent seven-year term. Prior to trial, the judge conducted hearings on: (1) whether defendant's confession was knowing and voluntary pursuant to the Miranda[1] rule; and (2) whether the videotaped statement of A.N. should be admitted at trial in addition to her testimony. The judge denied defendant's motion to suppress his confession to the police and found the videotaped statement by A.N. to be admissible. We reverse and remand for a new trial, concluding that both rulings were erroneous.
These are the salient facts. The investigation into this abuse case began with a different victim and a different defendant. M.N., a seven-year old girl, was interviewed by detectives, due to allegations that she was sexually abused by Glenn B. Green. Subsequently, Green pled guilty to second degree sexual assault. As part of this investigation, A.N. and her mother were interviewed by investigators from the Burlington County Prosecutor's Office. Investigator Dawn Cooper conducted the interview and Investigator Michael Sperry monitored and videotaped the interview from another room. A.N. confirmed the allegations of abuse by Green and reported that defendant also had sexually abused her by: forcing her to touch his penis while masturbating and ejaculating in front of her; touching her genitals and buttocks; and putting his penis on top of and inside of her genitals.
Two weeks later, Sperry called defendant and explained that he was conducting an investigation against Green and wanted to talk regarding anything he had witnessed. Sperry did not indicate to defendant that A.N. had made allegations about him. Defendant agreed and went to the Pemberton Police Station. There, Sperry gave defendant Miranda warnings. Defendant indicated that he understood them and signed a card acknowledging the same. After defendant gave a formal taped statement regarding the incident he witnessed of Green abusing A.N., Sperry expressed his concern that defendant had also been sexually abused by Green. According to Sperry, defendant became extremely and visibly upset. At first, he denied that he had been abused by Green. *37 However, when Sperry continued confronting defendant by telling him that A.N. had made some accusations against him as well, defendant became distraught. He cried and had difficulty speaking. Defendant was not given the Miranda warnings a second time. According to Sperry, defendant said:
[I] messed up, and you know, after it happened [I] can't talk about it. [I] can't even look [A.N.] in the face.
Defendant then confessed that he had forced A.N. to touch his penis and that he had masturbated in her presence. Sperry requested that defendant give a second formal taped statement regarding the confession. Defendant agreed and complied with this request.
At a pre-trial hearing on the admissibility of defendant's taped confession, the judge found that defendant's rights had not been violated because defendant was read his Miranda rights, which he understood and acknowledged in writing. The judge also found by observing defendant during his testimony at the Miranda hearing that he "had the capacity to act knowingly and intelligently in proceeding with the questioning." Finally, the judge found that no violation occurred when the police failed to give Miranda warnings to defendant a second time prior to the confession.
At a pre-trial hearing on the admissibility of the videotaped statement by A.N., the judge found the videotape trustworthy.
At trial, A.N., then age eleven, testified. Despite many attempts by the prosecutor, she was non-responsive to many questions. She was unable to testify that defendant touched her inappropriately, despite leading questions, although she did write his name on the blackboard. The transcript of her testimony discloses many "no response" notations instead of answers to questions. When the prosecutor used anatomically correct dolls, asking A.N. to indicate where she had been touched or what part of a boy's body she had seen, A.N. made no response. Further, A.N. was unresponsive to the following questions: "has [defendant] touched you anywhere?" and "can you show us what they touched you with on your private area?"
On cross-examination, defense counsel could not elicit recollections from A.N. on questions going to the heart of the charges. She did not describe on direct or cross-examination the acts described in her videotaped statement. Neither did she corroborate her accusation that defendant engaged in sexual activity from the videotaped statement.
Officer Cooper testified regarding the circumstances under which the videotape was made. The State moved to enter A.N.'s out-of-court videotaped statement into evidence, pursuant to N.J.R.E. 803(c)(27). Defendant objected. The judge admitted the videotape into evidence.
Defendant testified and told the jury that he was adopted at age seven. At ten years old, his adoptive parents divorced. Subsequently, he was placed into foster care. He lived briefly with Green and his wife. According to defendant, Green and another man sexually abused him. Defendant also reported being sexually and physically abused at other different placements. Beginning around 1994, he reported to DYFS that Green was sexually abusing A.N. DYFS was reluctant to act on his reports and no case was ever initiated. Defendant denied sexually assaulting A.N. He testified that he made up the confession, so as to ensure that A.N. would receive help for the sexual abuse that Green perpetrated against her.
Defendant presented three witnesses. His sister-in-law testified that she had the opportunity to socialize with defendant *38 during family occasions and that defendant interacted well with children and that they enjoyed "rough-housing" with him. Defendant's fiancée testified that defendant interacts well with children by playing games with them and by providing adult supervision. One of defendant's foster mothers testified that she had witnessed defendant, under stress, lying to authority figures and confessing to acts far beyond his own culpability.
On appeal, defendant contends:
THE SECOND TAPE SHOULD HAVE BEEN SUPPRESSED BECAUSE THE STATEMENTS IT CONTAINED WERE NOT VOLUNTARY AND WERE OBTAINED ONLY AFTER DEFENDANT'S WILL WAS OVERBORNE.
A. The Characteristics of The Defendant.
B. The Details of the Interrogation.
1. [Defendant] Was In Custody When The Second Taping Began.
2. The Police Failed To Inform [Defendant] Of His Rights Before Beginning The Interrogation That Elicited The Incriminating Statements.
Defendant argues that the judge erred by admitting the audio taped confession. Specifically, defendant contends that he should have received Miranda warnings a second time, and hence, his confession was not voluntary and was only obtained after his will was overborne. We agree that the police should have given defendant Miranda warnings after informing him that he was a suspect.
The United States Constitution requires that certain warnings must be given when a suspect is subjected to custodial interrogation. Miranda, supra, 384 U.S. at 436, 86 S.Ct. at 1602, 16 L.Ed.2d at 694. Whether a suspect is in "custody" is a case-by-case determination, based upon the totality of the circumstances. State v. Stott, 171 N.J. 343, 367, 794 A.2d 120 (2002). A custodial interrogation does not require a formal arrest. State v. Coburn, 221 N.J.Super. 586, 595, 535 A.2d 531 (App.Div.1987), certif. denied, 110 N.J. 300, 540 A.2d 1281 (1988). The test in determining custodial action by interrogating officers and status is whether "the surrounding circumstances, fairly construed, would reasonably lead a detainee to believe he could not leave freely." State v. Choinacki, 324 N.J.Super. 19, 44, 734 A.2d 324 (App.Div.), certif. denied, 162 N.J. 197, 743 A.2d 849 (1999); State v. O'Loughlin, 270 N.J.Super. 472, 477, 637 A.2d 553 (App.Div.1994); see also Yarborough v. Alvarado, 541 U.S. 652, 662, 124 S.Ct. 2140, 2148, 158 L.Ed.2d 938, 950 (2004) (holding that "custody must be based on how a reasonable person in the suspect's situation would perceive his circumstances."). Among the relevant factors to consider are: the physical surroundings; the nature and degree of the pressure applied detaining the individual; and objective indications that the person questioned is a suspect. State v. Milledge, 386 N.J.Super. 233, 244, 899 A.2d 1052 (App.Div.), certif. denied, 188 N.J. 355, 907 A.2d 1014 (2006); State v. Pierson, 223 N.J.Super. 62, 67, 537 A.2d 1340 (App.Div. 1988) (citing United States v. Booth, 669 F.2d 1231, 1235 (9th Cir.1981)).
Here, we consider that the voluntary interview with defendant, became a custodial investigation upon defendant being informed that A.N. had accused him of sexual abuse. Therefore, the confession was the product of custodial interrogation. As we stated in State v. Micheliche, 220 N.J.Super. 532, 533 A.2d 41 (App.Div.), certif. denied, 109 N.J. 40, 532 A.2d 1108 (1987), the defendant, who was a suspect in a homicide, voluntarily came to the police station. We concluded that the State's *39 assertion that defendant was "free to leave may be incredible and not worthy of belief as a matter of law." Id. at 537, 533 A.2d 41. We suppressed the defendant's admissions. Ibid.
The more troublesome question is whether defendant knowingly and voluntarily waived his rights. It is well-settled that a defendant is free to waive his rights and agree to answer police interrogation. State ex rel. Q.N., 179 N.J. 165, 177, 843 A.2d 1140 (2004); State v. Wright, 97 N.J. 113, 123, 477 A.2d 1265 (1984); State v. Kennedy, 97 N.J. 278, 285, 478 A.2d 723 (1984). However, should a defendant contest his waiver later on, the State has the burden of proving beyond a reasonable doubt that the waiver was given knowingly, intelligently, and voluntarily based upon the totality of the circumstances. State v. Knight, 183 N.J. 449, 462-63, 874 A.2d 546 (2005), petition denied, 189 N.J. 426, 915 A.2d 1049 (2007); State v. Galloway, 133 N.J. 631, 654, 628 A.2d 735 (1993); State v. Bey (II), 112 N.J. 123, 134, 548 A.2d 887 (1988). A court must examine the nature of the interrogation and the characteristics of the defendant. Withrow v. Williams, 507 U.S. 680, 689, 113 S.Ct. 1745, 1751, 123 L.Ed.2d 407, 417 (1993); N.C. v. Butler, 441 U.S. 369, 374-75, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286, 293 (1979). Relevant factors the court should consider in determining whether the defendant's statement was voluntary are:
the suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved.
[Knight, supra, 183 N.J. at 462-63, 874 A.2d 546 (citing Galloway, 133 N.J. at 654, 628 A.2d 735); Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854, 862 (1973).]
Generally, if a defendant has been given the Miranda warnings, and subsequently waives them, the police do not need to re-administer the warnings later. State v. Abrams, 256 N.J.Super. 390, 396, 607 A.2d 179 (App.Div.), certif. denied, 130 N.J. 395, 614 A.2d 617 (1992) (citing State v. Melvin, 65 N.J. 1, 14, 319 A.2d 450 (1974)). That is because a valid waiver continues until the defendant revokes it. See State v. Perez, 334 N.J.Super. 296, 302-03, 759 A.2d 355 (App.Div.2000), certif. denied, 167 N.J. 629, 772 A.2d 931 (2001) (holding that following a valid waiver, there is no need to re-administer Miranda warnings unless the suspect asserts his right to counsel).
Because of the extraordinary persuasiveness they exert, confessions are not admissible unless they are voluntary and knowing. Jackson v. Denno, 378 U.S. 368, 385-86, 84 S.Ct. 1774, 1785-86, 12 L.Ed.2d 908, 921 (1964); State v. Wade, 40 N.J. 27, 35, 190 A.2d 657, cert. denied, 375 U.S. 846, 84 S.Ct. 100, 11 L.Ed.2d 73 (1963). However, Miranda warnings are required only after the person being questioned "is taken into `custody' or his freedom has otherwise been significantly restrained." Coburn, supra, 221 N.J.Super. at 595, 535 A.2d 531 (quoting Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222, 232 (1985)).
Here, the warnings were given when defendant perceived that he was merely a witness against Green. His decision to speak to Sperry without an attorney did not include knowledge that he himself was a suspect. Although the contents of Miranda warning itself inherently may suggest that the recipient of the warning could be a criminal suspect, in this case Sperry deflected such a perception by initially *40 leading defendant to think that his interview was about Green's culpability, not his own. Therefore, at the point when he acquired such knowledge, and that his personal liberty would be affected by his conversation with Sperry, the Miranda warnings should have been given again. Failure to do so requires that the confession be suppressed, as a matter of law. It is at this point that the impact of the words of the warnings: you have the right to remain silent; anything that you say can be used against you in a court of law; you have the right to the presence of an attorney, and if you cannot afford an attorney one will be appointed for you prior to any questioning if you so desire; becomes apparent and meaningful to a layperson. In short, defendant did not make a knowing and intelligent waiver of his rights when he gave the confession.
Use of an involuntary confession violates due process and the federal constitutional and state common-law privilege against self-incrimination. U.S. Const. amends. V, XIV; N.J. Const. art. I, ¶ 1; Brown v. Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682, 687 (1936); State v. Hartley, 103 N.J. 252, 260, 511 A.2d 80 (1986). Therefore, pursuant to New Jersey law, before a confession can be admitted into evidence, the State must prove beyond a reasonable doubt that it was voluntarily made. Knight, supra, 183 N.J. at 462, 874 A.2d 546; State v. Burris, 145 N.J. 509, 534, 679 A.2d 121 (1996), certif. denied, 152 N.J. 187, 704 A.2d 17 (1997); State v. Miller, 76 N.J. 392, 404-05, 388 A.2d 218 (1978); State v. Fletcher, 380 N.J.Super. 80, 89, 880 A.2d 1171 (App.Div.2005).
A defendant's constitutional right is violated if his conviction is based, in whole or in part, on an involuntary confession, regardless of its truth or falsity. Rogers v. Richmond, 365 U.S. 534, 544-45, 81 S.Ct. 735, 741-42, 5 L.Ed.2d 760, 768-69 (1961); see also Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166, 180 (1941) (holding that the Fourteenth Amendment forbids "fundamental unfairness in the use of evidence, whether true or false."); Miller, supra, 76 N.J. at 405, 388 A.2d 218 ("A confession which is the product of physical or psychological coercion must be considered to be involuntary and inadmissible in evidence regardless of its truth or falsity."). "This is so even if there is ample evidence aside from the confession to support the conviction." Miranda, supra, 384 U.S. at 465, 86 S.Ct. at 1623, 16 L.Ed.2d at 718 (citing Malinski v. New York, 324 U.S. 401, 404, 65 S.Ct. 781, 783, 89 L.Ed. 1029, 1032 (1945); Bram v. United States, 168 U.S. 532, 540-42, 18 S.Ct. 183, 186, 42 L.Ed. 568, 572-73 (1897)); see Spano v. New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 1208, 3 L.Ed.2d 1265, 1272 (1959); see also Payne v. Arkansas, 356 U.S. 560, 567-68, 78 S.Ct. 844, 850, 2 L.Ed.2d 975, 981 (1958).
From our review of the record, against the constitutional precedents, we conclude that defendant did not make a knowing and voluntary waiver of his right to remain silent and not discuss the allegation against him with Detective Sperry. Therefore, defendant's challenge to the admissibility of his statement should have been granted.
Defendant also contends that:
THE IMPROPER ADMISSION OF THE INTERVIEWING OFFICER'S HEARSAY TESTIMONY AND [A.N.'S] UNRELIABLE OUT-OF-COURT STATEMENTS REGARDING ALLEGED SEXUAL ABUSE DENIED DEFENDANT THE RIGHT TO CONFRONT WITNESSES AND THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. *41 AMENDS. VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 9, 10.
Defendant argues that the judge erred by admitting A.N.'s statement to Officer Cooper into evidence. We agree.
It is a basic tenet of evidence law that an out-of-court statement is hearsay and inadmissible to prove the truth thereof unless it comes within one of the recognized exceptions to the hearsay rule. N.J.R.E. 802. An exception exists for statements by a child under the age of twelve, relating to a sexual offense. N.J.R.E. 803(c)(27). That rule provides:
STATEMENTS BY A CHILD RELATING TO A SEXUAL OFFENSE. []A statement made by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil proceeding if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.
[N.J.R.E. 803(c)(27); see State v. R.B., 183 N.J. 308, 314, 318-19, 873 A.2d 511 (2005) (holding that the victim's pre-trial statement to police was properly admitted pursuant to N.J.R.E. 803(c)(27) because it was sufficiently trustworthy, and victim gave meaningful opportunity for cross-examination at trial).]
According to New Jersey jurisprudence, a trial court must "find, in a hearing conducted pursuant to [N.J.R.E.] 104(a), that on the basis of the time, content and circumstances of the statement, there is a probability that the statement is trustworthy." State v. D.G., 157 N.J. 112, 128, 723 A.2d 588 (1999). The importance of the preliminary finding of trustworthiness in children's hearsay statements is due in part to the suggestive nature of the investigative interview. Id. at 131, 723 A.2d 588; State v. Michaels, 136 N.J. 299, 309, 642 A.2d 1372 (1994) (holding that the "investigative interview is a crucial, perhaps determinative, moment in a child-sex-abuse case.").
Here, assuming that the judge's decision on trustworthiness is supported by the proofs, A.N.'s statement meets the requirements for admission set by N.J.R.E. 803(c)(27). However, our inquiry does not stop there because more than mere compliance with the law of evidence is required. In Idaho v. Wright, 497 U.S. 805, 814, 110 S.Ct. 3139, 3145-46, 111 L.Ed.2d 638, 651 (1990), the United States Supreme Court determined that hearsay statements that fall within a hearsay exception, must also satisfy the requirements of the Confrontation Clause[2]. Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); Crawford v. Washington, 541 U.S. 36, 61, 124 S.Ct. 1354, 1370, 158 L.Ed.2d 177, 199 (2004) (refusing "to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions *42 of `reliability'."); see also State v. Buda, 389 N.J.Super. 241, 912 A.2d 735 (App.Div. 2006), certif. granted, 191 N.J. 317, 923 A.2d 232 (2007) (holding that the excited utterance made by a child victim to the DYFS worker at the hospital, although admissible pursuant to New Jersey evidence law, was nonetheless testimonial and hence inadmissible pursuant to the Confrontation Clause and N.J. Const. art. I, ¶ 10).
In Crawford, the Supreme Court adopted a new rule, which requires exclusion of testimonial statements, regardless of their purported reliability. The Court concluded "the principal evil at which the Confrontation Clause was directed was the . . . use of ex parte examinations as evidence against the accused." Crawford, supra, 541 U.S. at 50, 124 S.Ct. at 1363, 158 L.Ed.2d at 192. For that reason, the Confrontation Clause was intended to assure that the accused would have the opportunity to cross-examine the witness against him or her. Ibid. The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, and reliability can best be determined "by testing in the crucible of cross-examination." Ibid. Thus, the Court held that out-of-court testimonial statements are inadmissible "unless [the declarant] was unavailable to testify and the defendant had had a prior opportunity for cross-examination." Id. at 54, 124 S.Ct. at 1365, 158 L.Ed.2d at 194. This is so even if the hearsay qualifies as a hearsay exception under state law. Id. at 62-63, 124 S.Ct. at 1371, 158 L.Ed.2d at 200.
It is clear that A.N.'s videotaped statement was testimonial. State v. Burr, 392 N.J.Super. 538, 567, 921 A.2d 1135 (App.Div.2007); Buda, supra, 389 N.J.Super. at 255, 912 A.2d 735. It was prepared by law enforcement officers with a view towards use at trial against defendant. Crawford, supra, 541 U.S. at 56, n. 7, 124 S.Ct. at 1367, 158 L.Ed.2d at 196. For that reason, "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Id. at 52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193. Their purpose is to establish the identity or collect evidence against the perpetrator of a crime.
The prejudice to defendant is compounded here by A.N.'s direct and cross-examination testimony, which was unresponsive to substantive questions regarding the charges. For that reason, the videotaped statement and Officer Cooper's retelling of A.N.'s statement to her, constitute the main evidence against defendant. The other substantive evidence is the confession, which we have already concluded should have been excluded.
The opportunity to cross-examine must be "full, substantial and meaningful in view of the realities of the situation." United States v. Franklin, 235 F.Supp. 338, 341 (D.D.C.1964); State v. Stupi, 231 N.J.Super. 284, 291, 555 A.2d 681 (App.Div.1989). Mere presence is not enough to render a witness available for cross-examination. See Maryland v. Craig, 497 U.S. 836, 845-46, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990) (emphasizing importance of "rigorous testing in the context of an adversary proceeding" of which physical presence plays a part, but only a part). Limitations on cross-examination, such as assertions of privilege, effectively make the witness unavailable. Thus, in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Court found that a witness who persisted in refusing to testify by invoking an invalid Fifth-Amendment privilege, was not sufficiently available for cross-examination to satisfy the requirements of the Confrontation Clause. Id. at 419, 85 S.Ct. at 1077, 13 L.Ed.2d at 937.
*43 Crawford holds that admission of a hearsay statement is viewed differently when the declarant testifies at trial. See Crawford, supra, 541 U.S. at 60, 124 S.Ct. at 1369, 158 L.Ed.2d at 197 (holding that "[t]he [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Although a defendant is not guaranteed "cross-examination that is effective in whatever way, and to whatever extent," the opportunity for cross-examination must be more than a mere sham. Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985); see California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970) (holding that hearsay statements are only admissible where the declarant is "subject to full and effective cross-examination."). A.N.'s complete inability to present current beliefs about any of the material facts, or to testify about her prior statements, is distinguishable from a situation where a trial witness for the prosecution simply has a bad memory. Cf. United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).
We reject the argument that the admission of A.N.'s videotape was harmless error. It is the State's burden to prove that an error denying a confrontation right did not "materially affect [] the verdict." United States v. Pugh, 405 F.3d 390, 401 (6th Cir.2005); see Idaho v. Wright, 497 U.S. 805, 828, 110 S.Ct. 3139, 3153, 111 L.Ed.2d 638, 661 (1990) (holding that "the government bears the burden of coming forward with indicia of reliability sufficient for the purposes of the Confrontation Clause, and that if it fails to do so the statements are inadmissible."); see also Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967) (reiterating the holding from Fahy v. Connecticut, 375 U.S. 85, 84 S. Ct. 229, 11 L.Ed.2d 171 (1963), stating "that the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.").
Here, the State did not meet this burden. A.N.'s videotape was the principal evidence against defendant. Therefore, the improper admission of the videotaped interview with A.N. contributed materially to the verdict. This was not harmless beyond a reasonable doubt.
Applying these principles here, we conclude that A.N.'s videotape, which was the sole substantive evidence proving defendant's conduct, should have been excluded from evidence. The videotaped statement was "testimonial," there was no prior opportunity for defendant to cross-examine A.N., and there was no opportunity for an adequate and meaningful cross-examination at trial. This error warrants reversal.
Defendant also contends:
THE BASE SENTENCE IMPOSED ON THE DEFENDANT ON COUNT ONE IS EXCESSIVE, THE PERIOD OF PAROLE INELIGIBILITY IS UNWARRANTED, AND A REMAND IS REQUIRED PURSUANT TO STATE V. NATALE, 184 N.J. 458, 878 A.2d 724 (2005).
A. The Sentence Imposed Was Excessive.
B. The Period of Parole Ineligibility Was Unwarranted.
C. The Sentence Is Illegal Pursuant To State v. Natale and its progeny.
Given our conclusion that the convictions must be vacated on two other independent grounds, we do not reach the third contention.
The denial of the motions to exclude defendant's confession and the admission *44 of A.N.'s videotape are reversed, the convictions and sentences are vacated. The matter is remanded to the Law Division, Burlington County for a new trial. We do not retain jurisdiction.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] U.S. Const. amend. VI; see also N.J. Const. art. 1, ¶ 10.