**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1483-24

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

EDWIN RAMIREZ,

      Defendant-Appellant.

_____

Submitted October 16, 2025 – Decided February 13, 2026

Before Judges Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-06-0477.

Benedict Altman and Nettl, LLC, attorneys for appellant (Steven D. Altman and Philip Nettl, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following an adverse decision on his motion to suppress certain evidence obtained from an initial warrantless entry into his residence, defendant Edwin Ramirez pled guilty to one count of unlawful possession of a weapon, N.J.S.A. 2C:39-59(b)(1).

On appeal, defendant raises this issue for our consideration:

> The trial court erred in denying [d]efendant's [m]otion to [s]uppress, because the warrantless search of [d]efendant's apartment violated the Fourth Amendment to the United States Constitution, and Article I, [Paragraph] 10 of the New Jersey Constitution, because there was no reasonable basis to believe that anyone needed [e]mergency [a]id inside.

We agree and conclude the trial judge incorrectly determined the police lawfully entered defendant's residence without a warrant under the emergency-aid exception to the warrant requirement. This rendered the search and seizure of the evidence constitutionally infirm.

## I.

On June 13, 2020, at 4:14 p.m., the Edison Police Department was notified defendant had been admitted to John F. Kennedy Medical Center suffering from two gunshot wounds. The individual who transported defendant to the hospital, identified in the reports only as A.V.K., reportedly refused to answer any questions and was uncooperative with hospital security.

Edison Police Detective Michael Kohut was designated as the lead patrol officer and responded to the crime scene.

After another Edison police officer interviewed A.V.K., the police learned:

> [Defendant] and [A.V.K.] were leaving . . . [defendant's] apartment located at 268 College Drive in Edison in order to get to [A.V.K.]'s car. . . . [T]he car was parked a little distance from the apartment and as they both got in the vehicle three male suspects walked up to them from behind and demanded their property[.]
>
> . . . .
>
> [A.V.K.] put his hands up, told them they could have whatever they want but [defendant] took off running with his book bag when one of the male subjects shot him [an unknown amount of] times, [defendant] went down and these males ran up to wherever he went down and took his book bag . . . [a]long with the cell phone.

A.V.K. stated the suspects fled in an unknown direction. Defendant then ran back to A.V.K.'s car and reported "I'm shot[,] get me to a hospital." A.V.K. then gave a vague description of the suspects noting they were masked and had light brown skin complexions.

Based on this information, officers were dispatched to 268 College Park Drive in Edison. Det. Kohut was informed "the shooting happen[ed] in the

parking lot" and was instructed to proceed to the parking lot to "see if [he] [could] identify a crime scene. . . ." However, while en route, he was contacted by his supervisor, Sergeant Ray Powers, who redirected him to defendant's apartment.

At 4:37 p.m., Det. Kohut arrived at an area near, or across from, defendant's apartment. He "staged the area" and waited for the arrival of additional units. While waiting, he received radio transmissions stating defendant's mother was not aware of her son's condition and that officers were trying to contact her. Det. Kohut was informed the suspects were identified as three males of Hispanic or African American descent and they were masked.

Following Sgt. Power's orders, Det. Kohut responded to Building 6 at 268 College Drive at 5:12 p.m. along with responding officers to search for additional victims and to secure the scene. As he walked from the area in which he parked to the apartment, Det. Kohut did not observe shell casings nor any blood.

> Q:     [D]id you physically see those shell casings and the blood prior to 5:10 when you're walking to 268?
>
> A:     I did not.
>
> Q:     Did you physically see that potential crime scene when you're at the door before [you're] at the door around 5:12 of 268?

4                                                                         A-1483-24

A:     I did not.

Q:     So is it fair to say it's coming through the dispatch but you didn't . . . potentially or you didn't see that potential crime scene at the time when you arrived at 268?

A:     Correct.

Q:     So what were you doing when you finally arrived at 268 around approximately 5:10, 5:12?

A:     Searching for additional victims that might have either fled to 268 or in that area.

When Det. Kohut arrived at defendant's basement apartment, he knocked several times. There was no response. When he found the door unlocked, he advised his supervisor: "Not getting a response here at 268. The doors are unlocked and opened. What's your pleasure?"

In reply, Sgt. Powers directed the officers to open the door, to enter the apartment, and to make sure there were no additional victims. They did so and found none. However, when entering the back bedroom, Det. Kohut detected a strong odor of raw marijuana and observed a large clear plastic bag of marijuana, a vacuum sealer, multiple tetrahydrocannabinol cartridges, and an open brown box containing numerous large bags of marijuana on the bed. The officers exited the apartment after a sweep lasting about two minutes and secured the scene.

5

Det. Kohut left the apartment and went to "try and ascertain where the [robbery] crime scene might be." He, along with other officers, proceeded to a field by the dumpster area outside the apartment buildings as indicated by the initial radio transmissions. Adjacent to the dumpsters and approximately 100 yards away from defendant's apartment building, Det. Kohut discovered two shell casings and droplets of blood. The officers did not find any additional victims.

At 10:10 p.m., Det. Kohut telephonically applied for, and received, a search warrant for defendant's apartment. During the ensuring search, the officers discovered a .380 caliber semiautomatic handgun.

The grand jury indicted defendant for second-degree possession of a firearm while possessing a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:39-4.1, second-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(10)(b); and second-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a).

On October 27, 2022, defendant moved to suppress the evidence seized from his apartment. After a hearing, and in a written opinion, the trial judge denied the motion and ultimately concluded

> In considering the totality of the circumstances presented, the court finds that the State has

demonstrated the existence of exigent circumstances by a preponderance of the evidence. Awareness of defendant's condition, and the statements offered by A.V.K. regarding the shooting and its location were corroborated by police investigation. This supplied officers with probable cause to believe that a shooting had, in fact, occurred in the parking lot or field area near dumpsters located about [100] yards from defendant's residence. Police also had probable cause to suspect, (as they were advised by A.V.K.), that the three individuals involved in the robbery and shooting, at least one of which was armed, were now at-large.

In applying these principles, the court finds that the conditions leading to the shooting of defendant were both severe and serious leaving defendant in critical condition. The immediate circumstances confronting police are, therefore, found to invoke the highest level of urgency in their response. . . . In this case, and in considering the totality of the circumstances, exigent circumstances are found.

. . . .

To suspect that the victim's unlocked home, located only [] [100] yards from the robbery and shooting, may reveal or contain additional victims, or injured persons in need of assistance is found to be objectively reasonable under the prevailing circumstances. The court further finds a reasonable nexus between the area of the shooting and the potential for additional victims or injured persons based upon information available. Again, certitude is not the standard, but rather an objectively reasonable belief viewed from the officer's vantage point at that specific moment in time. Here, exigent circumstances existed to justify the warrantless entry of defendant's apartment for the limited purpose of identif[ying]

7

injured or additional victims under the Emergency Aid Doctrine.

. . . .

This court finds the limited time between the shooting and the warrantless entry into the apartment to be reasonable. That is, the court finds, based on the conditions faced in this timeframe, that the dangerous nature associated conditions at issue persisted, nothing objectively suggesting that the immediate threat of events had subsided. It was, therefore, objectively reasonable to suspect, or believe, that additional victims may still be found in the immediate area, that persons in the vicinity of the shooting may still require medical attention, and that safety concerns for both residents and police remained viable.

Defendant ultimately pled guilty to an amended charge of unlawful possession of a firearm, N.J.S.A. 2C:39-5(b)(1), and was sentenced to five years in prison with forty-two months of parole ineligibility. The State agreed defendant would remain out of custody pending resolution of this appeal.

II.

A.

On a motion to suppress, our standard of review is deferential. State v. Nyema, 249 N.J. 509, 526 (2022). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the

record."  State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)).  Therefore, we "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).  By contrast, the determination of whether those facts established an emergency sufficient to satisfy the emergency aid exception is a legal conclusion which we review de novo.  See State v. Mellody, 479 N.J. Super. 90, 122 (App. Div. 2024).

### B.

A warrantless search is presumed to be unreasonable and, therefore, invalid.  State v. Valencia, 93 N.J. 126, 133 (1983).  A search of a person's home without a warrant "must be subjected to particularly careful scrutiny." State v. Bolte, 115 N.J. 579, 583 (1989).  "[P]hysical entry of the home is the chief evil against which the working of the Fourth Amendment is direct[ed]." State v. Cassidy, 179 N.J. 150, 160 (2004) (quoting State v. Hutchins, 116 N.J. 457, 463 (1989)) (citation omitted).  However, a warrantless search may be found to be reasonable if it falls within one of the "few well-delineated

exceptions" to the warrant requirement. State v. Pineiro, 181 N.J. 13, 19 (2004) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).

The existence of exigent circumstances may provide such an exception. See State v. Vargas, 213 N.J. 301, 314 (2013) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)) overruled in part by State v. Edmonds, 211 N.J. 117, 131-32 (2012). Exigent circumstances exist when the officers do not have sufficient time to obtain a warrant. State v. Johnson, 193 N.J. 528, 557 n.7 (2008). A warrantless search also is authorized when the police "have an objectively reasonable basis to believe that prompt action is needed to meet an imminent danger." State v. Miranda, 253 N.J. 461, 480 (2023) (quoting State v. Hemenway, 239 N.J. 111, 126 (2019)).

To that end, a warrantless search of a person's home by police may be permitted under the emergency-aid exception to the warrant requirement. Cassidy, 179 N.J. at 161. When exigent circumstances are present "[p]olice officers serving in a community-caretaking role are empowered to make a warrantless entry into a home under [this] exception . . . ." Vargas, 213 N.J. at 323. To justify the intrusion, however, the State must demonstrate "(1) the officer had 'an objectively reasonable basis to believe that an emergency require[d] that he [or she] provide immediate assistance to protect or preserve

life, or to prevent serious injury' and (2) there was a 'reasonable nexus between the emergency and the area or places to be searched.'" Edmonds, 211 N.J. at 132 (quoting Frankel, 179 N.J. at 600). "The emergency-aid doctrine . . . must be 'limited to the reasons and objectives that prompted' the need to immediate action." Id. at 134 (quoting Frankel, 179 N.J. at 599).

Applying these principles, we disagree with the trial judge's legal conclusions and are unpersuaded that the emergency-aid exception justified the warrantless entry into defendant's home.

1.

Det. Kohut lacked an objectively reasonable basis to believe that an emergency existed which required immediate assistance to protect life or to prevent injury. The entirety of the information possessed by the police to generate the search stemmed from A.V.K.'s statement the officers. A.V.K. stated the shooting occurred only outside by the dumpsters and made no mention of any incident nor violence inside the apartment nor involvement of other victims. Similarly, the record contains no facts—whether from dispatch, physical observations, or other witness statements—indicating the possibility of any injured person or ongoing emergency inside the apartment. Det. Kohut did not observe any signs of forced entry, blood, or struggle at the apartment,

A-1483-24

nor did he detect any sounds that could have reasonably suggested a need for emergency aid when he arrived there and during the thirty-five minutes he remained in his car awaiting backup.

Nevertheless, Det. Kohut was ordered to enter the apartment by Sgt. Powers, premised solely on the speculative possibility that an unidentified victim might have fled inside. This hypothesis was unsupported by any facts and was disconnected from both the witness's account and the circumstances reported by Det. Kohut. Defendant, as the only known injured party, was accounted for and in critical condition undergoing surgery at the hospital. A.V.K. was also at the hospital, giving a statement to the police.

All facts considered, the information available to the police, both through witness statements and their independent observations, demonstrated no objective basis for believing anyone else in the apartment was at risk. This is further supported by the fact that the shooting occurred in the parking lot—an estimated 100 yards away from defendant's apartment. The facts reveal nothing to suggest any clear and imminent danger was present. It follows that the record does not support a finding that the officer had an objectively reasonable belief that an ongoing emergency occurred. Accordingly, we

12

conclude the State has failed to satisfy the first prong of the emergency-aid exception test.

2.

The State failed to demonstrate a reasonable nexus between the shooting, that was acknowledged to have taken place in the dumpsters in the field adjacent to defendant's apartment, and defendant's residence. The record shows that the police received information that defendant was shot outside his residence—in the parking lot near the field by the dumpsters. The shooting was estimated to be 100 yards from the entrance to his apartment. Det. Kohut was dispatched to 268 College Park Drive to identify the shooting scene, with an initial assignment focused on the field. A.V.K.'s statement clearly identified the crime scene as a distinct and physically separate area from the apartment interior. The only known victim—defendant—was admitted to the hospital. No evidence nor witness statement indicated that anyone fled into, was trapped inside, or was present in the apartment in need of aid. Furthermore, prior to entering the apartment, Det. Kohut observed no blood, shell casings, forced entry, nor any signs of distress at the door or in the immediate vicinity.

A-1483-24

After a thorough review of the record, we conclude there are no facts which support the trial court's finding that the search of defendant's apartment was "constrained to the reasons and objectives that prompted the need for immediate action." Edmonds, 211 N.J. at 147 (citing Frankel, 179 N.J. at 599.) Instead, the officers' search was untethered from any objectively identifiable emergency and from the actual location where the shooting occurred—and where any assistance might have been necessary. Accordingly, the State failed to satisfy the second prong of the emergency-aid exception.

Reversed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division